**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **DENNIS ABBOTT,** *et al.,* | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION: 1:22-00267-KD-C** |
| | ) | |
| **AUSTAL USA, LLC,** | ) | |
| **Defendant.** | ) | |

**ORDER**

This matter is before the Court on the Plaintiffs' motion to amend the complaint (with proposed second amended complaint) (Doc. 94; Doc. 94-1).

**I.    Background**

On July 4, 2022, 54 Plaintiffs (Plaintiffs)[1] initiated this action against Defendant Austal USA, LLC (Austal). (Doc. 1). On July 17, 2022, Plaintiffs filed a First Amended Complaint.  (Doc. 4).  ***The First Amended Complaint is the operative complaint in this case.***

In the First Amended Complaint Plaintiffs allege three (3) claims against Austal: 1) Title VII religious discrimination (failure to accommodate) (Count I - all Plaintiffs); 2) ADA (Title I)[2] disability discrimination (failure to accommodate) (Count II - Plaintiffs Jason Dyson, Kristopher

---

1 There were 54 original plaintiffs in this case. However, this is not a class action. Plaintiffs are: Dennis Abbott, Kenneth Allison, Steven Bailey, Douglas Beck, John Boyd, Joseph Taylor Brown, Kristin Carroll, Tracy Chapman, Pheap Chum, Christopher Colvin, Michael Crenshaw, Melissa Daidone, Clarence Davis, Samantha Davis, Sharon Davis, Timothy Daw, Jason Dyson, Russell Dyson, Jessie Ellison, Joseph Hackett, Christopher Hayes, Kristopher Holifield, Joseph Jalbert, Christopher Jordan, Nathan Kantola, Zackary Kesterson, Ryan King, Christopher Lancaster, James Lindsey, Keith Lovett, Glenn Lund, Necos Martin, Patrick Martin, Jimmy Middleton, Devan Tyler Mims, Charles Myers, Robert Olszandski, Shane Robinson, Ankhiet Rodriguez, Antonio Ross, Charles Roy, Joseph Schwall, Bradley Schwartz, Alexis Scott, Justin Stewart, Anthony Swann, Joe D. Thompson, Christopher Thornton, David Tolbert, Mark Vardaman, Martin Van den Bosch, Steven Woodward, Elisha Wright, and Timothy Yace.

2 Plaintiffs allege disability discrimination in employment.

1

Holifield, Christopher Jordan, and Antonio Ross); and 3) negligence/gross negligence (deprivation of constitutional rights regarding religious beliefs) (Count III - all Plaintiffs).  (Doc. 4). Notably, Plaintiffs' federal claims allege as follows against Austal:

> **COUNT I**
> **... Title VII ... Religious Discrimination-Failure to Provide Accommodation ...**
>                        \*\*\*
>
> Plaintiffs ... are entitled to their fundamental right to exercise their religion of choice afforded to them under the First Amendment of the United States Constitution ... Plaintiffs are members of a protected class, all of which being devout members of the Christian faith.
>
> Plaintiffs hold sincere religious beliefs that preclude them from receiving any of the experimental COVID-19 vaccines.
>
> Plaintiffs informed Austal ... of their sincerely held religious beliefs and requested religious exemptions from the vaccine mandate.
>
> During the course of Plaintiffs' employment ... and since the announcement of .... mandate, Plaintiffs were subjected to a discriminatory, hostile, and offensive work environment because of their religious beliefs. This discriminatory, hostile, and offensive work environment included, but was not limited to:
> > #1- Disparaging and unfavorable treatment by employees, supervisors, managers, and agents of Austal ... as compared to similarly situated employees who received one of the three experimental vaccines.
> > #2- Being terminated for not receiving one of the three experimental vaccines, all of which have proven to have a vast array of serious side effects and have caused an increasing number of deaths.
>
> Austal .... refused to engage in a meaningful interactive process with Plaintiffs regarding their religious accommodation requests ... only responded to Plaintiffs with questions designed to challenge the sincerity of their religious beliefs.
>
> Austal ... failed to provide Plaintiffs with reasonable accommodations for their religious beliefs ... advising Plaintiffs that they would be deemed to have "voluntarily resigned" if they did not obtain an experimental COVID-19 vaccine by October 27th, 2021.
>
> Through Defendants actions, policies, employment practices, and conduct directed at Plaintiffs' religious faith, in addition to failing to engage in the interactive process or offer any reasonable accommodations, Austal ... deprived the Plaintiffs of their constitutional right to protection under law in violation of Title VII ... this deprivation was done intentionally, purposefully, and willfully.
>
> **Count II**
> **ADA ... Disability Discrimination-Failure to Provide Accommodations...**
>                        \*\*\*

... Jason Dyson, Kristopher Holifield, Christopher Jordan and Antonio Ross informed Austal of their medical conditions requiring an exemption from ... [the] mandate or obviating the need for one the three experimental vaccines.

Plaintiffs requested reasonable medical accommodations from ... [the] mandate for their medical conditions.

... Austal ... refused to engage in an interactive process with Plaintiffs regarding their medical accommodation request.

Austal ... violated the ADA. .. when it denied Plaintiffs' accommodation requests.

Austal ... discriminated against Plaintiffs Jason Dyson, Kristopher Holifield, Christopher Jordan and Antonio Ross based on their medical conditions.

Austal .... failure to provide medical accommodations has harmed the Plaintiffs.

By failing to engage in the interactive process of offering reasonable accommodations and subsequently terminating Plaintiffs ... on their refusal to take one of the three experimental COVID-19 vaccines into their bodies, Austal ... discriminatory actions were intentional and/or reckless ...violation of the ADA ...

(Doc. 4 at 31-33).

Additionally, the First Amended Complaint set forth the following employment discrimination related allegations:

This is an action ... redress unlawful discrimination, harassment, and retaliation against the Plaintiffs based on those who requested religious and/or medical accommodations from Defendant's COVID-19 vaccine mandate .... Defendant has engaged in an unfounded pattern and practice of religious and disability discrimination in employment opportunities and to secure the protection for and to redress the deprivation of such rights secured by Title VII ... [ADA] ... which provide for relief against discrimination and harassment in employment on the basis of religion and medical status and retaliation related thereto ... Defendant has subjected them to a hostile work environment and wrongful termination based on their sincerely held religious beliefs and/or medical capabilities.

Rather than complying with its obligations under Title VII and the ADA, Austal .... informing the requesting employees that they would be effectively terminated if they didn't receive one of three experimental vaccines.

Austal ... actions left the Plaintiffs with the impossible choice of either taking one of the three experimental COVID-19 vaccines, at the expense of their religious beliefs and/or health, or losing their livelihoods ... Austal ... violated Title VII ... and the ADA by failing to engage in the interactive process and providing reasonable accommodations ....

***

3

**This case challenges Austal's decision to implement a COVID-19 vaccine mandate without also granting reasonable accommodations as required under Title VII and the ADA ...**

***

... Austal ... implemented the ... vaccine policy to all of its' employees on October 9th ... the communication went on to state:

> "An employee with a disability ... who has a qualifying medical condition that contraindicates vaccination, or who objects to being vaccinated on the basis of a sincerely held religious belief/practice, can request an exemption/accommodation ... Approval ... will be subject to specific legal requirements. Notification will be given to the employees if the requirements are not met or cannot be accommodated."

... Plaintiffs had submitted a religious and/or medical exemption within the time frame allotted... over 200 Austal Employees who had not yet taken one of the experimental vaccines .... on ... October 22, 2021 ... were told, in part, that "all of your exemption requests have been denied" and that they needed to receive one of the vaccines by the date of October 27th or they would be terminated ...

***

... [Subsequently] ... Plaintiffs reported to work as their job duties required, and at the end of their shift, their security badges were turned off...

***

Title VII .... prohibits Austal from engaging in numerous forms of discrimination in virtually every employment circumstance ...

***

...under the ADA, Austal ... may not "discriminate against a qualified individual on the basis of a disability." ...

***

... Plaintiffs .... possess sincerely held religious beliefs and/or have experienced previous medical complications with vaccine injections, which have made them hesitant to allowing the injecting of a foreign "experimental" substance into their bodies against their express consent ...

***

... as members of the Christian faith, they possess sincerely held religious beliefs against receiving compulsory injections of any of the experimental vaccines due to the fact that the COVID-19 vaccines have been manufactured using fetal cell lines ("fetal tissue") from induced abortions, which is against their conscience, beliefs and religion.

.... Jason Dyson, Kristopher Holifield, Christopher Jordan and Antonio Ross also assert that, given recent medical complications stemming from previous vaccines (evidenced in medical records), that they have documentable medical evidence that serve as a compelling reason to not receive any of the experimental COVID-19 vaccines.

... Plaintiffs ... possess sincerely held religious beliefs and/or documentable medical evidence as to why they were hesitant to adhere to Austal ... policy mandating COVID-19 vaccines. .... this hesitancy was summarily dismissed when Austal .... denied all of the Plaintiffs' valid religious and/or medical exemption requests and subsequently terminated all of the Plaintiffs without regard to their religious beliefs and/or medical status. Moreover, Austal failed to even provide an opportunity for Plaintiffs to engage in reasonable discussions concerning their hesitancy to receiving the one of the COVID-19 vaccines.

4

(Doc. 4 at 3-4, 16, 23-26, 30-31 (emphasis added)).

On August 16, 2022, Austal filed its Answer to the First Amended Complaint.  (Doc. 6). Austal acknowledged Plaintiffs' Title VII and ADA claims while generally denying any unlawful conduct or entitlement to relief, and denied that it subjected Plaintiffs to a "'hostile work environment and wrongful termination based on their sincerely held religious beliefs and/or medical capabilities,' or to any other unlawful conduct[.]"  (Doc. 6 at 2).

On September 6, 2022, Plaintiffs moved to amend the complaint; the proposed second amended complaint alleged new Title VII and ADA claims (Title VII religious discrimination, Title VII hostile work environment, Title VII religious harassment, ADA disability discrimination (Plaintiffs Jordan/Ross), ADA hostile work environment (Plaintiffs Jordan/Ross), ADA disability harassment (Plaintiffs Jordan/Ross), and Section 504 Rehabilitation Act disability discrimination (Plaintiffs Jordan/Ross)). (Docs. 18, 23-1). The motion was denied on September 22, 2022.  (Doc. 25).  On November 1, 2022, Plaintiffs again sought leave to file a second amended complaint which would include five (5) defendants and 16 state/federal claims based on "newly discovered facts" "through research into Defendant's business dealings, Defendant's ... documentation provided to its employees during Fall 2021, interviewing the total ... Plaintiffs .... among the 3 lawsuits .... former employees[.]" (Doc. 30). The proposed new claims included the Title VII and ADA claims Plaintiffs had previously sought to allege in September 2022. Austal opposed Plaintiffs' motion based on futility and frivolity. (Doc. 42). In reply, Plaintiffs offered "an alternative proposed amended complaint" to "remedy any issues" related to federal pleading standards (Doc. 44-1) in lieu of the initial proposed second amended complaint (Doc. 30-1). (Doc. 44 at 24). In March and April 2023, rulings issued in the other Austal cases (CV 1:22-328 and CV

1:22-329 respectively) regarding Plaintiffs' motions to amend and proposed amended complaints in those cases. Given those rulings, in mid-April 2023 Plaintiffs voluntarily withdrew their alternative proposed second amended complaint in this case, voluntarily dismissed certain claims and defendants, and requested leave of Court to file a new modified proposed second amended complaint and new motion to amend in light of the rulings in those cases. (Doc. 90). The Court granted the Motion, ordered Plaintiffs to file a new motion to amend with a new proposed second amended complaint, and set a briefing schedule. (Docs. 91, 92).

On April 25, 2023, the 54 Plaintiffs filed a new motion to amend their complaint (Doc. 94), a new proposed Second Amended Complaint (Doc. 94-1), and their EEOC Charges (Doc. 94-2). In the proposed Second Amended Complaint, Plaintiffs allege the following new claims against Austal: 1) by all Plaintiffs -- Count IV Title VII Religious Discrimination (Disparate Treatment), Count V Title VII Religious Discrimination (Hostile Work Environment), and Count VI Title VII Religious Discrimination (Religious Harassment); and 2) by Plaintiffs Christopher Jordan and Antonio Ross -- Count VII ADA Disability Discrimination (Disparate Treatment), Count VIII ADA Disability Discrimination (Hostile Work Environment), Count IX ADA Disability Discrimination (Disability Harassment), and Count X Violation of Section 504 Rehabilitation Act of 1973 (Disability Discrimination); and 3) by all Plaintiffs -- Count XI Violation of Alabama State Law: Invasion of Privacy (Intrusion & Seclusion Theory). (Doc. 94-1 at 45-59).

Specifically, all plaintiffs allege the following **_new_** Title VII claims against Austal for religious disparate treatment (Count IV), religious hostile work environment (Count V), and religious harassment (Count VI):

> **COUNT IV**
> **Violation of Title VII ...**
> **Disparate Treatment - Religious Discrimination ...**

6

***

... Plaintiffs have been discriminated against by Austal ... because of their religious beliefs in the terms of wages/compensation, promotions, job assignments, discipline, discharge (inactive status and/or termination), and other terms, conditions, and privileges of their employment.

Austal ... has engaged in and continues to engage in a pattern and practice of discriminating against its employees on the basis of religion, with respect to wages/compensation, promotions, job assignments, discipline, discharge (inactive status and/or termination), and other terms, conditions, and privileges of their employment ...

The selection procedures of Austal ... have and continue to have a disparate impact on employees who possess sincerely held religious beliefs, including.. Plaintiffs.

Jobs which could potentially result in promotions for the .... Plaintiffs are not posted and instead given to individuals who do not express their sincerely held religious beliefs against the vaccine mandate.

Employees who express their religious beliefs were denied positions, stripped of responsibilities, and were subject to disciplinary actions at disproportionate rates than individuals who did not express such religious beliefs. Austal ... policies are only targeted at the ... Plaintiffs ....

Austal ... hiring practices and promotion process delineate a preference to only hire individuals that do not express such religious beliefs.

In the absence of such religious discrimination, the ... Plaintiffs would have a greater opportunity of both supervising and being supervised by persons of their same religious beliefs, having persons of their same religious beliefs integrated into the decision-making process as it related to wages/compensation, promotions, job assignments, discipline, discharge, and other terms, condition, and privileges of employment. By having members of their own religious beliefs, Plaintiffs ....conditions in all of the foregoing respects would have been significantly improved and they would have been less likely to have been subjected to religious bias in such decisions to the same degree that they have been.

But-for the ... Plaintiffs' religious beliefs, Austal ... would not have engaged in such conduct that had a disparaging effect upon the .. Plaintiffs ....

Austal ... failed to take any prompt and effective action reasonably calculated to result in the prevention of and/or remedy of the religious discrimination of the ... Plaintiffs.

Through Austal .... actions, policies, employment practices, and conduct directed at Plaintiffs' religious faith, in addition to failing to engage in the interactive process or offer any accommodations, Austal ... intentionally or recklessly deprived the ... Plaintiffs of their constitutional rights to protection under law in violation of Title VII.

***

**Count V**
**Violation of Title VII ...**
**Creation of a Hostile Work Environment**

7

***

.... Plaintiffs suffered mistreatment based ... as Christians. Defendant's conduct was so severe or pervasive that it altered the terms, conditions, or privileges of employment, which subsequently created a work environment riddled with abuse.

... Plaintiffs undertook all requisite and applicable procedures to inform Austal ... of the harassment and toxicity that was pervasive around the workplace.

... Plaintiffs' subjugation to such conduct that was motivated on religious grounds has been authorized, ratified, encouraged, and condoned by Austal ....

Austal ... is responsible for the creation of a hostile work environment under a theory of vicarious liability or direct liability. Austal ... directly engaged in the consistent harassment and directly contributed to the creation of a hostile work environment.

Austal ..., its supervisors, managers, and/or human resources department did not take any steps to assist in the alleviation of this harassing behavior and were in fact one of the primary sources of the harassing behavior.

Austal ... failed to take any prompt and effective action reasonably calculated to result in the prevention and remedy of the religious harassment, religious discrimination, and/or creation of a hostile work environment of ... Plaintiffs.

Through Austal ... actions, policies, employment practices, and conduct directed at Plaintiffs' religious faith, in addition to failing to engage in the interactive process or offer any accommodations, Austal ... intentionally or recklessly deprived the .... Plaintiffs of their constitutional rights to protection under law in violation of Title VII.

***

**COUNT VI**
**Violation of Title VII...**
**Harassment on Religious Grounds**

***

Title VII .... prohibits Austal ... from discriminating against its employees on the basis of their sincerely held religious beliefs.

Austal ... conduct was so severe or pervasive that it altered the terms, conditions, or privileges of employment.

... Plaintiffs undertook a myriad of requisite and applicable procedures to inform Austal ... of the harassment and the culture of toxicity pertaining to religion.

Austal ... is responsible for such harassment under ... vicarious ... or direct liability.

... Austal ... had actual knowledge of the actions of its managers and supervisors based on its involvement or conversely had constructive knowledge of such conduct based on the internal organizational policies advanced by Austal ....

8

Austal ... failed to take any prompt and effective action reasonably calculated to result in the prevention of and/or remedy of the religious harassment and discrimination of the ... Plaintiffs and were in fact one of the primary sources of the harassing conduct.

Through Austal ... actions, policies, employment practices, and conduct directed at the ... Plaintiffs' religious faith, in addition to failing to engage in the interactive process or offer any accommodations, Austal ... intentionally or recklessly deprived the ... Plaintiffs of their constitutional rights to protection under law in violation of Title VII ...

(Doc. 94-1 at 48-52).

Separately, Plaintiffs Jordan/Ross allege the following **new** claims against Austal for ADA disparate treatment, hostile work environment, and harassment (Counts VII-IX):

**... COUNT VII ... DISPARATE TREATMENT ...**
... Plaintiffs have been discriminated against by Austal ... because of their disability status in the terms of wages/compensation, promotions, job assignments, discipline, discharge (inactive status and/or termination), and other terms, conditions, and privileges of their employment.

Austal ... engaged in and continues to engage in a pattern and practice of discriminating against its employees on the basis of disability, with respect to wages/compensation, promotions, job assignments, discipline, discharge (inactive status and/or termination), and other terms, conditions, and privileges of their employment. ....

...The selection procedures of Austal ... have and continue to have a disparate effect on employees who have disabilities, including ... Plaintiffs.

Jobs which could potentially result in promotions for .... Plaintiffs are not posted and instead given to individuals who do not express their disability status.

Employees who reveal their disability status were denied positions, stripped of responsibilities, and were subject to disciplinary actions at disproportionate rates than individuals who did not express such medical complications .... policies are only targeted ... Plaintiffs ....

Austal USA hiring practices and promotion process delineate a preference to only hire individuals that do not express such disability status.

In the absence of such disability discrimination, Plaintiffs would have a greater opportunity of both supervising and being supervised by persons of their same disability, having persons of their same disability integrated into the decision-making process as it related to wages/compensation, promotions, job assignments, discipline, discharge, and other terms, condition, and privileges of employment. By having members of their own disability ... Plaintiffs ... would have been significantly improved and .... less likely to have been subjected to disability bias in such decisions to the same degree that they have been.

But-for ... Plaintiffs' disabilities, Austal ... would not have engaged in such conduct that had a disparaging effect upon them ...

Austal ... failed to take any prompt and effective action reasonably calculated to result in the prevention of and/or remedy of the disability discrimination ....

Through Austal ... actions, policies, employment practices, and conduct directed at ... Plaintiffs disability status, in addition to failing to engage in the interactive process or offer any accommodations, Austal ... intentionally or recklessly deprived .. Plaintiffs of their constitutional rights to protection ... in violation of the ADA...

***

### ... COUNT VIII ... HOSTILE WORK ENVIRONMENT

The ADA prohibits Austal ... from discriminating against its employees on the basis of their disability.

... Plaintiffs suffered mistreatment based on their protected characteristic as disabled individuals. Austal ... conduct was so severe or pervasive that it altered the terms, conditions, or privileges of employment, which subsequently created a work environment riddled with abuse.

... Plaintiffs undertook all requisite and applicable procedures to inform Austal ... of the harassment and toxicity that was pervasive around the workplace.

... Plaintiffs' subjugation to such conduct that was motivated on disability grounds has been authorized, ratified, encouraged, and condoned by Austal ....

Austal ... is responsible for the creation of a hostile work environment under ... vicarious ... or direct liability. Defendants directly engaged in consistent harassment and directly contributed to the creation of a hostile work environment.

Austal ... its supervisors, managers, and/or human resources department did not take any steps to assist in the alleviation of this harassing behavior and were in fact one of the primary sources of the harassing behavior.

Austal ... failed to take any prompt and effective action reasonably calculated to result in the prevention and remedy of the disability harassment, disability discrimination, and/or creation of a hostile work environment of ... Plaintiffs.

Through Austal .. actions, policies, employment practices, and conduct directed at Plaintiffs' disability status, in addition to failing to engage in the interactive process or offer any accommodations, Austal ... intentionally or recklessly deprived ... Plaintiffs of their constitutional rights to protection ... in violation of the ADA.

***

### ... COUNT IX ... HARASSMENT ON DISABILITY GROUNDS

... The ADA prohibits Austal .. from discriminating against its employees on the basis of their disability.

Austal ... conduct was so severe or pervasive that it altered the terms, conditions, or privileges of employment.

10

> ,...Plaintiffs undertook a myriad of requisite and applicable procedures to inform Austal ... of the harassment and the culture of toxicity regarding disability Austal ... are responsible for such harassment under ... vicarious ... or direct liability.
>
> ... Austal ... had actual knowledge of the actions of its managers and supervisors based on its involvement or conversely had constructive knowledge of such conduct based on the internal organizational policies advanced by Austal ....
>
> Defendants failed to take any prompt and effective action reasonably calculated to result in the prevention of and/or remedy of the disability harassment and discrimination ... and were ... one of the primary sources of the harassing conduct.
>
> Through Austal .... actions, policies, employment practices, and conduct directed at Plaintiffs' disability status, in addition to failing to engage in the interactive process or offer any accommodations, Austal ... intentionally or recklessly deprived .... Plaintiffs of their constitutional rights to protection ... in violation of the ADA....

***

(Doc. 94-1 at 53-57).

Rather than file a Response directly to Plaintiffs' motion, Austal filed a Fed.R.Civ.P. Rule 12(b)(6) motion to dismiss Counts IV-IX and Count XI of the *proposed* Second Amended Complaint. (Doc. 95). "While Austal acknowledges that this Court has not yet entered an Order on Plaintiffs' Motion, in the interest of efficiency and based on the Court's Orders in .. [the other cases] ... granting Plaintiffs leave to filed amended complaints that are virtually identical to the Amended Complaint proposed by Plaintiffs here, Austal ... waives its filing of a response to Plaintiffs' Motion and ... proceeds with filing this Motion to Dismiss." (Doc. 95 at 1 at note 1, 5).[3]

A motion to dismiss a pending proposed amended complaint is premature, but in the interests of efficiency, the Court will consider the arguments.

## II.    <u>Rule 15 Amendments & The Proposed Second Amended Complaint</u>

Rule 15(a) of the <u>Federal Rules of Civil Procedure</u> governs amendments as follows:

**a) Amendments Before Trial.**

---

3 Austal cites "Allen, et al. v. Austal USA, LLC, 1:22-cv-00321-KD-B and Baugh, et al. v. Austal USA, LLC, 1:22-cv-00329-KD-C."  There is no <u>Allen</u> CV 1:22-321 case; the <u>Allen</u> case is CV 1:22-328.

**(1) Amending as a Matter of Course.** A party may amend its pleading once as a matter of course within: **(A)** 21 days after serving it, or **(B)** if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

**(2) Other Amendments.** In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

The timeframe for amendment as a matter of course has passed: Plaintiffs' Complaint was filed on July 4, 2022 (Doc. 1) and Plaintiffs filed a First Amended Complaint on July 17, 2022 (Doc. 4) which Austal answered on August 16, 2022 (Doc. 6). The next motion to amend, to file a second amended complaint, was filed on November 1, 2022 -- more than 21 days after Austal filed its Answer and so Plaintiffs did not move to amend within 21 days after service of same. Plaintiffs' current motion was filed on April 25, 2023. Thus, Rule 15(a)(2) provides the only avenue for amendment. And absent Austal's consent -- which has not been given -- leave of Court is required.

Leave should be freely given "when justice so requires" except in the presence of countervailing factors such as undue prejudice to the opposing party and futility of the amendment. See, e.g., Foman v. Davis, 371 U.S. 178, 182 (1962); Bartronics, Inc. v. Power-One, Inc., 245 F.R.D. 532, 534 (S.D. Ala. 2007). "[U]nless a substantial reason exists to deny leave to amend, the discretion of the district court is not broad enough to permit denial[.]" City of Miami v. Bank of Am. Corp., 800 F.3d 1262, 1286 (11th Cir. 2015) (citation omitted). Courts "may consider several factors ... including 'undue delay, bad faith or dilatory motive [on the part of the movant], repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." Perez v. Wells Fargo N.A., 774 F.3d 1329, 1340–1341 (11th Cir. 2014).

Notably, leave to amend may be denied "when such amendment would be futile." Hall v. United Ins. Co. of Am., 367 F.3d 1255, 1263 (11th Cir. 2004). Per Garrett Inv., LLC v. SE Prop. Hldgs., LLC, 2013 WL 1191237, *2 (S.D. Ala. Mar. 22, 2013):

> ..... a "district court may deny leave to amend a complaint if it concludes that the proposed amendment would be futile, meaning that the amended complaint would not survive a motion to dismiss."... "must be dismissed if it fails to state a claim upon which relief could be granted."... the reviewing court must "accept[ ] the factual allegations in the complaint as true and construe [ ] them in the light most favorable to the plaintiff" *Id.* (citation omitted). Thus, the ... [claim] ... must " 'state a claim for relief that is plausible on its face.'" *Id.* quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570... (2007). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678... (2009). However, the ... [claim] "need not include detailed factual allegations, but it must set forth 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Id.* quoting *Twombly,* 550 U.S. at 555...

See also e.g., New York Life Ins. Co. v. Grant, 57 F.Supp.3d 1401, 1409-1410 (M.D. Ga. 2014).

As stated in Federal Home Loan Corp. v. Brooks, 2014 WL 5410236, *1 (N.D. Ala. Oct. 23, 2014):

> ...the Federal Rules...require only that a complaint ... provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a) ... The complaint must include enough facts "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 ... Ultimately, the well-pleaded complaint must present a reasonable inference from the facts it alleges that show a defendant is liable. *Reese v. Ellis, Painter, Ratterree & Adams, LLP,* 678 F.3d 1211, 1215 (11th Cir. 2012). To survive...the allegations ... must permit the court based on its "judicial experience and common sense ... to infer more than the mere possibility of misconduct." *Iqbal*, 129 S.Ct. at 1949...

And per Gulf Coast Mineral, LLC v. Tryall Omega, Inc., 2016 WL 344960, *1 (M.D. Ala. Jan. 27, 2016):

> "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.... If there are "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim, there are "plausible" grounds for recovery, and a motion to dismiss should be

denied. *Twombly*, 550 U.S. at 556 .... The claim can proceed "even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* (citation and internal quotation marks omitted).

## III.   <u>Plaintiff Kristopher Holifield</u>[4]

In the proposed Second Amended Complaint, Plaintiffs name Kristopher Holifield as a party plaintiff.  Austal asserts that Plaintiff Holifield was dismissed from this case per Doc. 20. (Doc. 95 at 1 at note 1). A review of the record reveals that Plaintiff Holifield was a plaintiff in the original complaint and in the July 17, 2022 operative First Amended Complaint.  (Docs. 1, 4). However, on September 9, 2022, the Court ruled as follows: "Order. After a review of the pending motion to dismiss and the briefs (Docs. 5, 13 & 19), it is clear that the parties agree that Austal[']s motion to dismiss is due to be granted as to Plaintiff Holifield and Dysons respective ADA claims (Count II), with prejudice, for failure to state a claim upon which relief can be granted. Given this agreement, the claims will be removed by consent during the Rule 16 scheduling conference. The disputed portion of the motion, whether to dismiss Plaintiff Holifield as a plaintiff from this lawsuit, will be a topic of discussion during the scheduling conference." (Doc. 20). On October 25, 2022, after the scheduling conference, the Court ruled that Plaintiff Holifield's ADA claim was dismissed, but noted while "Holifield does not have any other claims pending .... it is his intent to seek to correct/add a title VII claim."  (Doc. 29 at 13 at note 1). On November 1, 2022, Plaintiffs filed a motion to amend, attaching a proposed second amended complaint naming Holifield as a party plaintiff for the proposed non-ADA claims (including Title VII claims).  (Doc. 30-1 at 5 at ¶25). Plaintiffs then filed a revised proposed second amended complaint naming Holifield as a party plaintiff for the proposed non-ADA claims (including Title VII claims). (Doc. 44-1 at 5 at

---

4 Holifield's status appears to have been overlooked by Plaintiffs.

¶25). Plaintiffs voluntarily withdrew Doc. 44-1 per the rulings in the other Austal cases (CV 1:22-328, CV 1:22-329), leaving the operative complaint in this case as the First Amended Complaint, which names Holifield as a party plaintiff for all proposed claims.

Given the prior rulings, Plaintiff Holifield cannot allege ADA claims against Austal. Since the Court's rulings *supra*, however, Plaintiffs have repeatedly named him as a plaintiff for their proposed non-ADA claims. Additionally, a review of the First Amended Complaint indicates that Plaintiff Holifield was *apparently* included in the Title VII and the negligence/gross negligence counts as both are asserted by the "Plaintiffs" and so it is unclear why he was believed to "not have any other claims pending."  Regardless, to the extent Plaintiffs seek leave to add Plaintiff Holifield is a party plaintiff, that portion of the motion is **GRANTED** as to non-ADA claims.

## IV.    Plaintiffs' Proposed Federal Claims Counts IV-IX

Plaintiffs' proposed new claims consist of: three (3) counts alleged by all Plaintiffs for Title VII religious discrimination via disparate treatment (Count IV), hostile work environment (Count V), and harassment (Count VI); and three (3) counts alleged by two (2) Plaintiffs Jordan/Ross against Austal for ADA disability discrimination via disparate treatment (Count VII), hostile work environment (Count VIII), and harassment (Count IX). (Doc. 94-1).

Austal opposes the amendment and argues that due to the allegations in Plaintiffs' EEOC Charges, these proposed claims could not have reasonably been expected to grow out of the Charges, and thus, Plaintiffs failed to exhaust their administrative remedies as to these claims:

> ... Plaintiffs have not administratively exhausted any claim other than their respective claims for Title VII religious failure to accommodate (all Plaintiffs) and ADA failure to accommodate (Plaintiffs Jordan and Ross) .... Plaintiffs failed to raise any such allegations of disparate treatment, disability discrimination, or hostile work environment based on disability within their respective EEOC Charges. ... Plaintiffs Jordan and Ross failed to raise any such allegations of disparate treatment, disability discrimination, or hostile work environment based on disability within their respective EEOC Charges. They did not

15

include any hint, mention, or suggestion at all of any concern, issue, or complaint they had about religious-based discrimination (all Plaintiffs) or disability-based discrimination (Plaintiffs Jordan and Ross) as to wages/compensation, promotions, job assignments, discipline, discharge (inactive status and/or termination), and other terms, conditions, and privileges of their employment or that they worked in a religiously hostile workplace "riddled with abuse" and wherein "harassment and toxicity that was pervasive around the workplace." ... the only actions by Austal constituting alleged discrimination identified in Plaintiffs' Charges were the alleged failure to accommodate and Plaintiffs' terminations as a result of the alleged failure to accommodate ...

***

... Plaintiffs' Charges read solely and explicitly ... that he had been denied a religious accommodation/exemption in violation of Title VII as well as a disability accommodation as to Plaintiffs Jordan and Ross in violation of the ADA-and were subsequently terminated as a result .... There is no statement or implication within the Charge even remotely suggesting that Plaintiffs were in any way complaining of any type of religious-based (all Plaintiffs) or disability-based (Plaintiffs Jordan and Ross) disparate treatment (i.e., that, as Christians, they were being treated differently from non- Christians with respect to the terms and conditions of their employment), or that, regarding Plaintiffs Jordan and Ross who claim to be disabled individuals, that they were being treated differently from non-disabled individuals with respect to the terms and conditions of their employment or of any type of religious-based harassment (all Plaintiffs) or disability-based (Plaintiffs Jordan and Ross) harassment ...

... the Title VII claims at issue here could not reasonably be expected to "grow out of" the scope of the EEOC's investigation of Plaintiffs' respective Charges which were based strictly on Austal's alleged Title VII failure to accommodate their religious accommodation/exemption requests (all Plaintiffs) or disability (Plaintiffs Jordan and Ross) ... The Title VII and ADA religious disparate treatment and harassment claims that Plaintiffs now include ... do not, in any way, "grow out of" the failure to accommodate claim in their respective Charges ...

(Doc. 95 at 11-14 (emphasis and footnote omitted)).

In response, Plaintiffs argue that their mere identification of Austal's Covid-19 vaccination mandate -- "the principal vehicle/subject of discrimination" -- in each of their EEOC Charges covers any/all types of discrimination and defines the "scope of the complaint."  Per Plaintiffs, because the discrimination "occurred under the 'umbrella' of ... [the] Mandate[,]" their proposed "Title VII and ADA claims are expressly derived from .... conduct to create, implement, enact, administer, and enforce" the mandate. (Id. at 9 (emphasis omitted)).  Specifically:

... the mandate ... was the principal vehicle/subject of discrimination identified by every Plaintiff in their Charges and served as the primary basis for discrimination ... identification

16

of [the] ... Mandate ... constitutes the "permissible scope of [Plaintiffs'] complaint" since the discrete acts of discrimination were taken to create, implement, administer, and enforce the mandate, these actions had occurred simultaneously, and were the exact conduct that served as the basis for Plaintiffs' existing claims under Title VII and ADA for Failure to Accommodate ...

... Plaintiffs' additional federal claims "reasonably grow" from their Charges because the Charges sufficiently identify and describe the ... Mandate as the principal vehicle of discrimination that led to their termination based upon their non-compliance with the mandate demonstrates Plaintiffs' explicit intention to allow the EEOC to investigate into the allegations concerning the mandate, its effects, and the "natural considerations" involved in the EEOC administrative investigatory process that allowed the agency to reasonably investigate ... the mandate is the "umbrella" subject matter mechanism that exists over Plaintiffs' otherwise descriptions of alleged discrimination that occurred as a result of the mandate, occurred simultaneously during the mandate, and were derived from the exact conduct that served as the basis for Plaintiffs' Failure to Accommodate claims ... Plaintiffs' description of discrete facts such as Defendant's failure to engage in the interactive process, universal denial of religious exemption requests, and failure to provide reasonable accommodations are all smaller and specific acts of discrimination that occurred under Defendant's larger dispositive policy that serves as the "umbrella" by which those discrete acts fit within ... because the Court and Defendant had previously recognized the validity of Plaintiffs' Failure to Accommodate ... claims that were expressly derived from this exact conduct referenced by Plaintiffs in their Charges, then it is logical to determine Plaintiffs' additional Title VII and ADA claims for discrimination "grow out" of Plaintiffs' Charges and/or are virtually indistinguishable these claims all directly stem from "umbrella" principal vehicle of discrimination .... [the] ... Mandate ... Plaintiffs' .... description of discrete actions by Defendant that were taken to create, implement, administer, and enforce the mandate were to provide further context of the allegations to the EEOC, served as the predicate of the same transactions, occurrences, and conduct that would not have occurred but-for the mandate, and whose actions all occurred during the same time period and dates that were indicated within each Plaintiffs' Charges ...

... Plaintiffs' sufficient description of alleged discrimination identified the principal vehicle of discrimination, the ... Mandate, and its predicate actions in furtherance of the mandate, such as the administration of the mandate through evaluation of Plaintiffs' religious exemptions and feasibility of accommodation, conduct undertaken to enforce compliance of the mandate, and the consequences of non-compliance (i.e., an employee's termination). Within each of these larger aspects of policies, procedures, and tangible employment actions by Austal USA, contained uniquely discrete factual circumstances of discrimination, which occurred on a microcosmic scale to each Plaintiff. These actuals were done in conjunction with the widely encompassing policies, procedures, and tangible employment actions by Austal USA all of the employees of the company as a whole. These microcosmic discrete instances of discrimination would naturally become apparent to the EEOC through its investigation of the primary mechanisms of discrimination that were referenced in each Plaintiffs' Charges ... As a result of Plaintiffs' sufficient depiction of such primary mechanisms of discrimination, the EEOC was able to conduct an appropriate, timely, wholistic, and reasonable assessment of the factual circumstances that would surface to the forefront of the EEOC's administrative investigation and serve as the basis for their determination. ... Plaintiffs' additional claims of religious discrimination

17

"reasonably grow out of" .... Charges due to the sufficiency of their descriptions of the major mechanisms of discrimination, which allowed the EEOC to "have the first opportunity to investigate the alleged discriminatory practice....

... the judicial scope of Plaintiffs' Second Amended Complaint ... pertain to the actions of religious and disability discrimination concerning Austal USA's creation, implementation, administration, and enforcement of its ... Mandate ... [and so] "can reasonably be expected to grow out of" Plaintiffs' Charges and/or are virtually indistinguishable with the existing claims...

*** 

Plaintiffs did not specifically articulate each discrete act of alleged discrimination against them in their respective Charges, nor were they required to do so, since an employee asserting discrimination in an EEOC charge of discrimination does not need to specific list each and every discrete act complained of ...

(Id. at 9-13, 17).

Before filing suit under the ADA or Title VII, a plaintiff must exhaust his administrative remedies by filing a Charge with the EEOC "within" 180 days "after the alleged unlawful employment practice occurred[,]" and by filing a civil action within 90 days after receipt of a right to sue letter from the EEOC. 42 U.S.C. §§ 2000e-5(e)(1), 2000e-5(f)(1), and 12117(a). [5] See e.g.,

---

[5] Austal asserts that "[t]he EEOC issued right-to-sue notices to all Plaintiffs between mid-April 2022 and late June 2022[]" and "no later than June 2022." (Doc. 95 at 4, 16). From this, Austal contends that Plaintiffs had 90 days from the date they received their June 2022 EEOC right to sue notices (Doc. 94-2) -- late September 2022 -- within which to file additional Title VII and ADA claims in this Court but failed to do so until November 1, 2022. (Doc. 95). There is nothing before the Court confirming the date upon which many of the Plaintiffs received their EEOC right to sue notices. For example, the EEOC right to sue notices for Plaintiffs Jordan/Ross submitted by Austal are undated and unsigned. Likewise, the EEOC right to sue notices for Plaintiffs Dennis Abbott, Kenneth Allison, John Boyd, Joseph Taylor Brown, Kristin Carroll, Tracy Chapman, Pheap Chum, Christopher Colvin, Michael Crenshaw, Melissa Daidone, Sharon Davis, Timothy Daw, Jason Dyson, Christopher Hayes, Joseph Jalbert, Christopher Jordan, Nathan Kantola, Zackary Kesterson, Christopher Lancaster, Keith Lovett, Necos Martin, Patrick Martin, Jimmy Middleton, Devan Tyler Mims, Charles Myers, Robert Olszandski, Shane Robinson, Anhkiet Rodriguez, Antonio Ross, Charles Roy, Joseph Schwall, Bradley Schwartz, Alexis Scott, Justin Stewart, Anthony Swann, Joe D. Thompson, Christopher Thornton, David Tolbert, Mark Vardaman, Martin Van den Bosch, Steven Woodward, Elisha Wright, and Timothy Yace, are undated and unsigned.  (Doc. 95-3). The dates for the remaining right to sue notices submitted by Austal are as follows: Steven Bailey 4/19/22, Douglas Beck 6/15/22, Clarence Davis 4/18/22, Samantha Davis 4/18/22,  Russell Dyson 4/18/22, Jessie Ellison 4/19/22, Joseph Hackett 4/18/22, Ryan King 4/19/22, James Lindsey 4/19/22, Glenn Lund 4/18/22. The Court could not locate the notice for Plaintiffs Kristopher Holifield. And while Austal also submitted copies of two (2)

Miller v. Georgia, 223 Fed. Appx. 842, 844 (11th Cir. 2007) (the ADA, 42 U.S.C. 12101, *et seq*, has adopted the same enforcement mechanisms as Title VII); Fry v. Muscogee Cty. Sch. Dist., 150 Fed. Appx. 980, 981 (11th Cir. 2005) ("[b]efore filing suit under the ADA, a plaintiff must exhaust her administrative remedies by filing a charge with the EEOC[]"). While a plaintiff is not permitted to allege new acts of discrimination in a complaint that were not raised in his EEOC Charge, the

---

April 19, 2022 postmarked envelopes addressed to Austal from the EEOC (Doc. 95-3 at 34, 71), there is no indication of their significance.

 Further, the Court notes that while Plaintiffs alleged only a singular Title VII count and a singular ADA count (both for failure to accommodate) in the operative July 2022 First Amended Complaint and state "[t]his case challenges Austal's decision to implement a COVID-19 vaccine mandate without also granting reasonable accommodations as required under ... the ADA...[,]" other employment discrimination terms were also stated therein.  These include allegations that Plaintiffs were:

  subjected to a discriminatory, hostile, and offensive work environment because of their religious beliefs ... [which] .. included but was not limited to:

   #1- Disparaging and unfavorable treatment by employees, supervisors, managers, and agents of Austal ... as compared to similarly situated employees who received one of the three experimental vaccines.

   #2- Being terminated for not receiving one of the three experimental vaccines, all of which have proven to have a vast array of serious side effects and have caused an increasing number of deaths.

      ***

  This is an action ...[to] ... redress unlawful discrimination, harassment, and retaliation against the Plaintiffs based on those who requested religious and/or medical accommodations from Defendant's .... mandate .... Defendant has engaged in an unfounded pattern and practice of religious and disability discrimination in employment opportunities and to secure the protection for and to redress the deprivation of such rights secured by Title VII ... [ADA] ... which provide for relief against discrimination and harassment in employment on the basis of religion and medical status and retaliation related thereto ... Defendant has subjected them to a hostile work environment and wrongful termination based on their sincerely held religious beliefs and/or medical capabilities...

(Doc. 4). ***Even so, none of these terms or allegations were present in the Plaintiffs' EEOC Charges***. Additionally, in September 2022 Plaintiffs apparently endeavored to build on those references by submitting a motion and proposed second amended complaint to also assert distinct Title VII and ADA claims for disparate treatment, hostile work environment, and harassment. (Doc. 23-1). And while the motion was denied, Plaintiffs continued to move to add these new federal claims, but those motions were denied, resulting in the current case posture. As such, Austal's contention that Plaintiffs waited until November 2022 to first assert (or try to assert) these additional Title VII and ADA claims is incorrect. ***Regardless, the point of reference remains each Plaintiffs' EEOC Charge -- that the scope of the judicial complaint in federal court is limited to the scope of an EEOC investigation prompted by the allegations of an EEOC Charge (i.e., what reasonably grew out of those Charge allegations).***

scope of an EEOC Charge "should not be strictly interpreted" and any claim that "can reasonably

be expected to grow out of the charge of discrimination" is allowed, including claims that "amplify,

clarify, or more clearly focus the allegations in the EEOC charge."  Gregory v. Georgia Dept. of

Human Resources, 355 F.3d 1277, 1280 (11th Cir. 2004) ("a plaintiff's judicial complaint is limited

by the scope of the EEOC investigation which can reasonably be expected to grow out of the

charge of discrimination[]").  "[T]he proper inquiry is whether the plaintiff's complaint is like or

related to, or grew out of, the allegations contained in the EEOC charge." Batson v. Salvation

Army, 897 F.3d 1320, 1328 (11th Cir. 2018). "The rational[e] for this limitation is that Congress

wanted the EEOC to have an opportunity to investigate and attempt conciliation of all claims

before litigation was brought." Sanchez v. Stand. Brands, Inc., 431 F.2d 455, 466 (5th Cir. 1970).[6]

Generally, a Title VII failure to accommodate claim is distinct from other types of Title

VII discrimination, an ADA failure to accommodate claim is distinct from other types of ADA

discrimination, and Title VII claims are distinct from ADA claims. See, e.g., Thomas v. Nicholson,

263 Fed. Appx. 814, 815 n.1 (11th Cir. 2008) (per curiam) (affirming the district court's dismissal

of plaintiff's racial harassment claims for failure to exhaust administrative remedies because the

EEOC charge alleged only racially discriminatory termination); Ramon v. AT&T Broadband, 195

Fed. Appx. 860, 866 (11th Cir. 2006) (per curiam) ("[Plaintiff] has pointed to no allegation in her

EEOC charge that reasonably points to the kind of pervasive and oppressive conditions that would

allow us to conclude that she intended to have the EEOC investigate the workplace for a hostile

work environment[]"); Green v. Elixir Indus., Inc., 152 Fed. Appx. 838, 841 (11th Cir. 2005) (per

curiam) (concluding that plaintiff's claim for a racial hostile work environment was procedurally

---

6 In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit
adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981.

deficient because the EEOC charge alleged only discriminatory termination and "[n]othing in [Plaintiff's] EEOC charge related to incidents of harassment, nor did anything mention the dates on which they occurred[]"); Palmer v. McDonald, 2019 WL 1490667, *9-10 (M.D. Fla. Apr. 4, 2019) (plaintiff failed to exhaust his administrative remedies regarding his ADA failure to accommodate claims as they were not included in this EEOC charge for ADA discriminatory treatment -- "*Green v. Nat'l Steel Corp., Midwest Div.*, 197 F.3d 894, 898 (7th Cir. 1999) ('[A] failure to accommodate claim ... is separate and distinct from a claim of discriminatory treatment under the ADA ... the two types of claims are analyzed differently under the law ... they are not like or reasonably related to one another, and one cannot expect a failure to accommodate claim to develop from an investigation into a claim that an employee was terminated because of a disability.' (citations omitted))[]"); Hunt v. Marshalls of MA, Inc., 2018 WL 11483366, *5 (N.D. Ga. Nov. 19, 2018) ("Defendant argues that Plaintiff's claims for race discrimination, harassment, and failure to promote are not 'like or related to' the disability claims alleged in Plaintiff's EEOC Charge. The Court agrees .... The only claims that Plaintiff has arguably administratively exhausted in his EEOC Charge are the claims expressly mentioned in that charge ...  disability discrimination, failure to accommodate, and retaliation, in violation of the ADA ... To the extent that Plaintiff now seeks to assert a race discrimination claim under Title VII, and claims for harassment and failure to promote, those claims are not 'like or related to' the claims under the ADA alleged in Plaintiff's EEOC Charge, nor could they reasonably be expected to arise during the course of the EEOC's investigation[]"); Hampton v. Penske Truck Leasing, 2018 WL 7082543, *3 (N.D. Ga. Jul. 11, 2018) *Report & Recommendation adopted by* 2018 WL 7107541 (N.D. Ga. Jul. 31, 2018) (finding that a plaintiff failed to exhaust administrative remedies regarding his Title

21

VII claims, dismissing same as frivolous, because "plaintiff's EEOC charge shows that he alleged discrimination, failure to accommodate, and termination based only on his cerebral palsy ... the charge makes no mention of any characteristic protected under Title VII (i.e., race, color, religion, sex, or national origin). one would not reasonably expect an EEOC investigation of potential violations of Title VII to grow out of the charge's allegations of disability-based discrimination[]"); Edmonds v. Southwire Co., 58 F.Supp.3d 1347, 1354-1355 (N.D. Ga. Nov. 10, 2014) ("[e]ven assuming that hostile work environment claims are cognizable under the ADA, *see Gilliard v. Ga. Dept. of Corr.,* 500 Fed. Appx. 860, 870 (11th Cir.2012) (assuming without deciding such claims are cognizable), Edmonds did not report any harassment or evidence of a hostile work environment when she filed her complaint with the EEOC and thus failed to exhaust her administrative remedies as to these claims ... Edmonds's EEOC charge alleges that she was denied accommodation and fired ... It makes no mention of a hostile workplace or any related harassment ... No investigation into Edmonds's questionnaire and EEOC charge would have reasonably revealed additional and unrelated 'harassment' claims[]"); Nelson v. PMTD Restaurants, LLC, 2013 WL 4045086, *8 (M.D. Ala. Aug. 8, 2013) ("an employer's failure to accommodate is a separate act of discrimination under the ADA that gives rise to a separate cause of action under the ADA, with a different burden of proof and different theory of liability. *See* 42 U.S.C. § 12112(b)(5)(A); *Terrell v. USAir*, 132 F.3d 621, 624 (11th Cir.1998) (setting forth the distinct burden of proof that applies to ADA failure-to-accommodate claims)[]"); Scott v. Kindred Hosp. Ltd. P'p, 2006 WL 2523093, *4 (N.D. Ga. Aug. 28, 2006) (plaintiff's ADA disability discrimination and retaliation claims based on the elimination of her position and termination "do not 'amplify clarify, or more clearly focus

the allegations in the EEOC charge [of failure to accommodate], but instead constitute new allegations of discrimination[]'").[7]

---

[7] See also e.g., Waggoner v. Carlex Glass Am., LLC, 682 Fed. Appx. 412, 417 (6th Cir. 2017) (employee's retaliation and hostile work environment claims, not in his EEOC charge, were not reasonably expected to grow out of his ADA discrimination or failure to accommodate claim); Hamar v. Ashland, Inc., 211 Fed. Appx. 309, 310 (5th Cir. 2006) (footnotes omitted) ("[t]he ... claims, failure to accommodate[] and disparate treatment,[] represent distinct categories of disability discrimination under the ADA. The EEOC could not reasonably have been expected, when presented with ... disparate treatment .... to investigate the entirely distinct failure-to-accommodate claim[]"); Novitsky v. American Consulting Engineers, L.L.C., 196 F.3d 699, 701-702 (7th Cir. 1999) (a failure to accommodate claim based on plaintiff's religion was not reasonably related to the EEOC charge discussing discrimination on bases of age and religion, even where plaintiff described in intake form an incident that supported her failure to accommodate theory); Davis v. ArcelorMittal USA, LLC, 2022 WL 1125781 (N.D. Ind. Apr. 15, 2022) ("plaintiff's original charge did not contain any allegations of harassment or hostile work environment ... [thus] ... Plaintiff's hostile work environment claim did not relate to, or grow out of, her original claims of failure to accommodate or disparate treatment[]"); Weatherly v. Ford Motor Co., 2019 WL 13297892, *3 (W.D. Mo. Mar. 28, 2019) (internal citations omitted) ("Courts have held that '[r]easonable accommodation claims are different from disparate treatment discrimination claims and require different liability analyses .... courts in other circuits and districts have concluded that a charge that only mentions discrimination does not exhaust a claim for a reasonable accommodation." ... in his .... charge, plaintiff only alleged a failure to reasonably accommodate his disability ... simply stating that you missed work due to a disability is different that alleging that your employer fired you because of your disability. These are two separate types of claims and the Court finds that plaintiff did not administratively exhaust his disability discrimination claims[]"); Waggoner v. Carlex Glass Am., LLC, 2016 WL 3632808, *6 (M.D. Tenn. Jul. 7, 2016) ("the retaliation and hostile work environment claims are not 'reasonably expected' to grow out of the ADA discrimination or failure to accommodate claim ... [t]he only facts ... alleged ... are that he has a disability, requested a reasonable accommodation, and the company discharged him[]"); Horton v. LKQ/Keystone Auto. Indus., 2016 WL 806154, *4 (W.D. Mich. Feb. 11, 2016) ("the EEOC's right-to-sue letter was limited to EEOC charge ... in which plaintiff claimed that he was denied an accommodation and demoted in violation of the ADA. .... [and] ... did not include factual allegations which would have prompted the EEOC to expand its investigation to include claims of retaliation or harassment... defendant's motion to dismiss ... should be granted as to ... a retaliatory hostile work environment[]"); Oliver v. Titlemax, 149 F.Supp.3d 857, 865 (E.D. Tenn. 2016) ("considering plaintiff's discriminatory discharge claim under the ADA ... plaintiff's charge does not allege that she was discharged ... nor does it state facts sufficient to prompt the EEOC to investigate .... whether she had been discriminatorily fired ... so the Court is unable to find that a discriminatory discharge claim reasonably grows out of the charged claims [for ADA failure to accommodate]" and "plaintiff's uncharged hostile work environment claim does not reasonably grow out of plaintiff's charge for failing to accommodate a disability .... as the conduct alleged in plaintiff's charge does not amount to harassment based on her disability ... the facts included in plaintiff's amended charge would not have prompted the EEOC to investigate a hostile work environment claim under the ADA[]"); Huang v. Seattle Public Library, 2016 WL 3405486, *5 (W.D. Wash. Jun. 21, 2016) ("Plaintiff's ADA failure to accommodate and hostile work environment harassment claims are not like or reasonably related to either of Plaintiff's employment discrimination charges. ... In this charge, Plaintiff solely alleges ... she was discriminated against on the bases of age, disability, nationality, and race when SPL did not promote

As detailed *supra*, Austal opposes Plaintiffs' proposed new Title VII and ADA claims and argues that due to the narrow allegations in their EEOC Charges, these claims could not have reasonably been expected to grow out of the Charges -- *i.e.*, Plaintiffs failed to first exhaust their administrative remedies as to these claims.

**First, concerning Plaintiffs' Jordan and Ross' proposed ADA claims for disparate treatment (Count VII), hostile work environment (Count VIII), and harassment (Count IX),** the Court begins with a review of their EEOC Charges.  On November 8, 2021, Plaintiff Jordan filed an EEOC Charge alleging Title VII religious discrimination for failure to accommodate, stating he notified Austal of his sincerely held religious beliefs (Christian) regarding the vaccination, the need for a religious accommodation from Austal's Covid-19 vaccination requirement, his request was denied on October 22, 2021, and was informed he would be terminated on November 1, 2021.  (Doc. 94-2 at 57). On January 4, 2022, Plaintiff Jordan filed an Amended EEOC Charge alleging <u>only</u> ADA failure to accommodate as follows:

> I am an individual with a medical condition which prohibits me from taking the COVID 19 vaccination. I was informed by the Respondent that all employees would be required to be fully vaccinated. I submitted documentation from medical personnel which noted my

---

her ...At no point in that charge does Plaintiff claim that SPL failed to accommodate her disability, nor does Plaintiff give any indication that she was subjected to a hostile work environment[]"); <u>Stone v. Premier Ortho. and Sports Med., PLC</u>, 2015 WL 4487778, *11 (M.D. Tenn. Jul. 23, 2015) ("[d]isability discrimination claims and claims alleging failure to accommodate are analytically distinct. '[T]hey are not like or reasonably related to one another, and one cannot expect a failure to accommodate claim to develop from an investigation into a claim that an employee was terminated because of a disability[;]'" <u>Dunavant v. Frito Lay</u>, 2013 WL 816673, *9 (M.D. Tenn. Mar. 5, 2013) ("a disparate treatment claim based upon an alleged disability does not encompass a failure to accommodate claim[]"); <u>Wamack v. Windsor Park Manor</u>, 836 F.Supp.2d 793, 798 (N.D. Ill. 2011) ("A disparate treatment claim is based on the premise that an employer took an adverse employment action, such as termination, based on the employee's actual or perceived disability ... a reasonable accommodation claim, on the other hand, looks at an employer's failure to make accommodations to the known physical or mental limitations of an otherwise qualified individual[]"); <u>Mattias v. Ready Workers Mgmt. Corp.</u>, 08–CV–7245, 2009 U.S. Dist. LEXIS 85677, *4 n. 2 (S.D.N.Y. Sept. 22, 2009) (concluding where allegations in plaintiff's EEOC charge related only to failure to accommodate and termination, his additional claims for failure to promote, unequal terms and conditions of employment, and retaliation were dismissed as unexhausted);

inability to get vaccinated. During my employment, I requested an exemption as a reasonable accommodation to Respondents [sic] Covid-19 vaccination mandate and my request was granted. The Respondent requests that I wear a mask and get tested. I am unable to wear a mask or get tested due to my medical condition. I am currently on a medical leave of absence. I believe I have been discriminated against because of my disability, in violation of Title I of the ... [ADA] ...

(Doc. 95-1). Subsequently, Plaintiff Jordan received a right to sue notice from the EEOC which is undated and unsigned. (Doc. 95-3 at 80).

On January 5, 2022, Plaintiff Ross filed an EEOC Charge alleging Title VII religious discrimination via failure to accommodate, stating he notified Austal of his sincerely held religious beliefs (Christian) regarding vaccination, the need for a religious accommodation from the vaccination requirement, his request was denied, and was terminated on October 27, 2021. (Doc. 94-2 at 92). That same day Plaintiff Ross filed an Amended EEOC Charge <u>also</u> alleging ADA failure to accommodate: "I am individual with a disability. I believe the Respondent failed to provide me with an exemption to the vaccination mandate in violation of Title I of the Americans with Disabilities Act Amendments Act of 2008." (Doc. 95-2). Subsequently, Plaintiff Ross received a right to sue notice from the EEOC which is undated and unsigned. (Doc. 95-3 at 139).

**<u>Second, regarding the 52 other Plaintiffs' Title VII claims for religious discrimination via disparate treatment (Count IV), hostile work environment (Count V), and harassment (Count VI),</u>** the Court begins with a review of their EEOC Charges. (Doc. 94-2). With slight variations (dates of accommodation/exemption requests, type of religion/religious beliefs), 52 Plaintiffs filed substantially similar EEOC Charges reporting a failure to accommodate based on religion, stating they were notified by Austal that all employees would be required to get fully vaccinated per the company's Covid-19 vaccination mandate, they hold religious beliefs that conflict with this vaccination requirement, they notified Austal of their religious beliefs, their

requests for religious accommodations (or exemptions) were denied, their employment was terminated, and Austal failed to accommodate them and terminated their employment because of their religion in violation of Title VII. (Doc. 94-2). The EEOC Charges for these 52 Plaintiffs are limited to Title VII allegations for failure to accommodate (religion).

As a whole, none of the Plaintiffs' EEOC Charges make any reference to either Title VII and/or ADA hostile work environment, harassment, or disparate treatment based on their religious beliefs and/or disabilities/medical conditions. The EEOC Charges instead, are limited to ADA failure to accommodate (medical condition/disability) and/or Title VII failure to accommodate (religion) for Plaintiffs Jordan and Ross; and Title VII failure to accommodate (religion) for the 52 other Plaintiffs. None of the EEOC Charges reference religious and/or disability-based discrimination as to wages/compensation, promotions, job assignments, discipline, discharge (inactive status and/or termination), and/or other terms, conditions, and privileges of their employment); disparate treatment (that they were being treated differently from non-disabled individuals with respect to the terms and conditions of their employment); harassment by anyone at Austal; any facts or allegations regarding a hostile work environment at Austal; etc. As a result, the Court cannot conclude that any of the Plaintiffs' EEOC Charges would prompt the EEOC to investigate claims other than a failure to accommodate under Title VII (religion) and/or the ADA (disability/medical condition), as indicated *supra*. Thus, Plaintiffs' proposed new Title VII and/or ADA claims do not reasonably grow out of their EEOC Charges.

Perplexingly, Plaintiffs argue that their mere identification of Austal's Covid 19 Mandate in their EEOC Charges -- *standing alone* -- is "sufficient" to encompass any type of discrimination claim in this case.  Plaintiffs' rationale is as follows: 1) "an employee asserting discrimination in

an EEOC charge of discrimination does not need to .... list each and every discrete act complained of[;]" 2) it was their "explicit intention" -- in identifying only the mandate -- "to allow the EEOC to investigate into the allegations concerning the mandate, its effects, and the 'natural considerations' involved in the EEOC administrative investigatory process that allowed the agency to reasonably investigate[;]"3) Plaintiffs' (now) amended description of "discrete acts" under the mandate "umbrella" -- via a proposed second amended complaint -- "are all smaller and specific acts of discrimination" "to provide further context ... to the EEOC[]"and so the claims are "virtually indistinguishable[;]" and 4) "[t]hese microcosmic discrete instances of discrimination would naturally become apparent to the EEOC through its investigation of the primary mechanisms of discrimination [the mandate] .... referenced in each Plaintiffs' Charges ... As a result of Plaintiffs' sufficient depiction of such primary mechanisms of discrimination [the mandate], the EEOC was able to conduct an appropriate, timely, wholistic, and reasonable assessment of the factual circumstances that would surface to the forefront of the EEOC's administrative investigation and serve as the basis for their determination."  Id.  The Court cannot agree.

First, Plaintiffs' contentions appear to confuse "discrete acts" within certain types of employment discrimination with distinct types of employment discrimination/claims as well as fail to address employment discrimination case law which provides significant guidance on the necessary link between the judicial scope of a complaint and the allegations of an EEOC Charge (see supra). Second, Plaintiffs' rationale reflects unsupported assumptions about what types of discrimination the EEOC would have been notified via the mere identification of Austal's Covid-19 mandate in an EEOC Charge, and what types of discrimination would have "naturally become apparent to the EEOC" when the only reported discrimination was failure to accommodate (Title

27

VII religion and/or ADA disability/medical condition). Third, Plaintiffs assume that the EEOC would somehow discern (without notice, information, or identification) the broad scope of Plaintiffs' "explicit intention" to assert other types of discrimination. Overall, Plaintiffs' characterization of Austal's Covid-19 vaccination mandate -- once identified in EEOC Charges -- as being the catchall "umbrella" sheltering (and including) all types of discrimination (unidentified, undescribed, and unknown types) to prompt the EEOC to investigate each type, to then be alleged in a federal complaint as "reasonably growing" from such Charges, lacks merit. Stated succinctly, abundant employment discrimination case law repeatedly and consistently concludes otherwise.

Upon consideration, it is **ORDERED** that Plaintiffs' motion to amend the complaint (Doc. 94) to allege on behalf of all Plaintiffs Title VII religious discrimination via disparate treatment (Count IV), hostile work environment (Count V), and harassment (Count VI), and on behalf of Plaintiffs Jordan and Ross ADA disability discrimination via disparate treatment (Count VII), hostile work environment (Count VIII), and harassment (Count IX), is **DENIED.**

## V.    Plaintiffs' Proposed State Law Claim: Count XI (Invasion of Privacy)

Plaintiffs move to amend the complaint to add an Alabama state law claim against Austal for invasion of privacy (intrusion upon seclusion or solitude) (Count XI):

> ... confidential medical information ... vaccination status, medical complications, and general medical information, were repeatedly disclosed publicly through a multitude of mediums ... permitted, endorsed, and/or permitted by Defendant.
>
> Austal USA's actions infringed upon the intrusion upon seclusion theory based upon their wrongful intrusion into Plaintiffs' private activities ... caused severe outrage, mental suffering, shame, and/or humiliation to the ... Plaintiffs and would otherwise cause such effects to be felt by a person of ordinary sensibilities.
>
> ... confidential medical information was shared publicly by Defendant in an effort to coerce and otherwise compel Plaintiffs to comply with its vaccination requirement. Austal USA's conduct to collect, disseminate, and failure to safeguard ... medical information regarding their medical capabilities, medical preferences, and medical status violates the ordinary decencies recognized in our society.

28

The actions [by] Austal ... Alabama state law.

As a result of the actions of Austal ... Plaintiffs have been and continue to be injured, suffering distress, humiliation, loss of prestige, mental anguish, emotional pain and suffering, and monetary and economic losses.

(Doc. 94-1 at 59 at ¶¶280-284). In support, Plaintiffs' proposed Second Amended Complaint

alleges as follows in connection with this claim:

This lawsuit is grounded in Defendant's ... intrusive conduct ...
***
... Plaintiffs and other unvaccinated employees were told daily to get the vaccine or they were going to be fired and that they should just resign instead. Plaintiffs and other unvaccinated employees during this time felt anxious, nervous, frustrated, and couldn't eat because of the stress and pressure placed upon them by their employer since Defendant was attempted to compel Plaintiffs to ... disregard their medical health at the expense of their career and livelihood at Defendant's business.
***
...Austal ... Leaders and employees would frequently belittle Plaintiffs' intelligence levels and called them "anti-vaxxers", stated "they had the plague", stated "they should be in quarantine", and stated "they were going to kill themselves, their families, and others because of their refusal to get the vaccine." Defendant's actions were so persistent and severe that it undermined Plaintiffs ability to effectively perform their job duties and impacted their family life.

Weekly throughout September and October 2021, Plaintiff Daw was forced to ask his fellow employees about their confidential medical information, record who was unvaccinated, and provide a list of people to Austal USA who asserted religious beliefs and/or disabilities in opposition to the ... Mandate.
***
In Fall 2021, Plaintiff Christopher Jordan was terminated for noncompliance of the .... Mandate after he received a medical exemption due Defendant's intrusive actions of obtaining his complete private medical record with no articulated basis for having such.

Plaintiff Beck and others had Austal USA Leaders to individually question employees about their vaccination status while at work in front of others, over the phone while not at work, and within group settings weeks before the General Employee Vaccination Announcement on October 1, 2021, and after until Plaintiffs termination on October 27, 2021. Plaintiff Douglas Beck contends he and others were asked to track COVID-19 vaccination percentages of employees prior to August 3, 2021, and started harassing Plaintiff Beck and other Plaintiffs months before the vaccination was mandated.
***
Even though not a single Plaintiff indicated, explicitly or implicitly, their vaccination status, vaccination preference, or any other confidential medical information prior to the announcement of Defendant's ... Mandate, Plaintiffs' respective supervisors and managers would elicit statements informing all unvaccinated individuals to receive the vaccination

or be subject to termination. These supervisors and managers would specifically identify Plaintiffs within their respective workgroup, singled these individuals out as unvaccinated persons ... and subsequently communicated each Plaintiffs' respective confidential medical information to Austal USA employees and others without consent.

\*\*\*

In Fall 2021, Defendant's executives seemingly turned the vaccinated cohort of employees against the unvaccinated cohort of employees at Austal ...USA by instigating fights and/or drama.... Leaders would daily pry into the personal medical information and preferences of all members of their workgroup and subsequently report such information to their respective supervisors. Plaintiffs interpreted this policy as "turning friends against friends" and Defendant's seemingly manipulated Plaintiffs' once friendly coworkers into belligerent individuals who would make offensive and degrading jokes about Plaintiffs' religious beliefs or disability status, and reprimanded Plaintiffs for trivial matters to punish them for their ... medical capabilities.

... vaccinated workforce was collecting confidential medical information of their underling employees, disseminating the obtained information to multiple other employees without Plaintiffs' consent or knowledge, and for those unvaccinated employees who were identified as dissenters. Defendant's supervisors and managers would intentionally target, harass, and/or frequently admonish Plaintiffs and other like-situated persons ... in a public display to embarrass or shame them. Defendant's actions defamed Plaintiffs' reputation in the community ....

... Plaintiffs ... were identified through these backchannels of data collection and dissemination without their knowledge or consent ... [and] ... were demonized. Plaintiffs were specifically targeted in meetings, publicly shamed for their ... confidential medical information among their workgroup and across the entire company, be forcibly subject to meetings for only unvaccinated persons ....

From September 2021 until termination, Plaintiffs feel Defendant was monitoring their private technological data or communications as well as those unvaccinated persons at its facilities to identify who remained unvaccinated so that Defendant's managerial staff could bring them into compliance with Defendant's .... Mandate through punitive actions that would result in public embarrassment or shame. Plaintiffs felt Defendant eavesdropped on their and other unvaccinated employees' private conversations, surveilled these employees, and accessed and/or monitored private medical data, statistics, information, and/or messaging of their personal phones, computers, and/or electronic devices, which were compiled in reports by Defendant and discussed for months at meetings among several employees. Plaintiffs' basis for this contention was determined through Defendant's access to information not known or disclosed to third parties by Plaintiffs given its personal and sensitive matter, but was somehow readily available, known, and frequently utilized by Plaintiffs' supervisors and managers against each Plaintiff and believed to be a harassment tactic to coerce vaccination compliance.

\*\*\*

... Defendant's ... Mandate, COVID-19 Masking Policy, COVID-19 Social Distancing Policy, and COVID-19 Testing Policy, were all unreasonably .... intrusive because of the means by which Defendant subjected Plaintiffs' ... to obtain information and enforce compliance of ... COVID-19 policies and procedures ... :

...(ii) the medical tests and masking policies tests were physically intrusive and degrading to Plaintiffs; ... (vi) coerced submission to a regime of Government mandated medical testing has a severe emotional and mental impact on Plaintiffs; .... (viii) Plaintiffs were isolated and ostracized from the majority of their peers to be subject to this unreasonable testing, social distancing, and masking requirement ....; (ix) Austal USA's actions to compel its employees to undergo a medical procedure without providing informed consent to the effects of the medical procedure infringes on Plaintiffs' fundamental rights to personal autonomy, bodily integrity, and right to refuse medical treatment; ... (xiv) the collection, dissemination, reporting, surveillance, and/or other actions taken to disseminate, generate, and identify facility data, reports, and/or statistics of unvaccinated employees' confidential information, which Defendant had failed to adequately safeguard from the public and its employees.

Defendant's ... Mandate, ... Masking Policy, ... Social Distancing Policy, and ... Testing Policy ... unreasonably intruded upon Plaintiffs' .... privacy and solitude.

Defendant required any vaccinated employee to prominently display a vaccinated logo-sticker, which was provided to each vaccinated employee, to wear on their hard hat. Plaintiffs and other unvaccinated individuals did not receive the vaccination logo-sticker. This distinction allowed .... Leaders to further identify Plaintiffs and other unvaccinated employees easily despite Plaintiffs never revealing their confidential medical information to any person ...

\*\*\*

All Plaintiffs contend they ... were subjected to Defendant's pervasive intrusions and harassing actions to ensure compliance ...

(Doc. 94-1 at 2, 14, 33-35, 40-44 at ¶¶3, 74-75, 135, 142, 144-145, 160-164, 167-169, 173). In their motion, Plaintiffs add that Austal "[d]isseminated private medical information of its employees to other employees without consent and posted information of employees on social media websites to the general public." (Doc. 94 at 8).

Historically, there have been four (4) categories of invasion of privacy in Alabama: 1) the intrusion upon the plaintiff's physical solitude or seclusion; 2) publicity which violates the ordinary decencies; 3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; and 4) the appropriation of some element of the plaintiff's personality for a commercial use. Bosarge v. Mobile Area Water & Sewer Serv., 2020 WL 2820201, *30 (S.D. Ala. May 29, 2020); Butler v. Town of Argo, 871 So.2d 1, 12 (Ala. 2003); Ex parte Birmingham News, Inc., 778 So.2d

31

814, 818 (Ala. 2000); Johnston v. Fuller, 706 So.2d 700, 701 (Ala. 1997).  Recently, however the district court in Rivers v. Noom, Inc., 2023 WL 359501, *4-5 (N.D. Ala. Jan. 23, 2023) cited the Alabama Right of Publicity Act (ARPA) and concluded that there are now three (3) categories of common law and one (1) statutory basis for invasion of privacy; namely, Ala. Act 2015-188, (Section 6-5-772(a) (Liability for use or indicia of identity without consent)).

Plaintiffs assert a proposed invasion of privacy claim for intrusion upon solitude or seclusion under Alabama common law. The Alabama Supreme Court, in Hogin v. Cottingham, 533 So.2d 525, 531-532 (Ala. 1988)[8] (footnote omitted, emphasis added), explained:

> ... "wrongful intrusion" ... has been defined as the "intentional interference with another's interest in solitude or seclusion, either as to his person or to his private affairs or concerns."[] W. Prosser & W. Keeton, *The Law of Torts*, p. 851 (5th ed. 1984). "[T]here must be something in the nature of prying or intrusion" and "the intrusion must be something which would be offensive or objectionable to a reasonable person. The thing into which there is intrusion or prying must be, and be entitled to be, private." *Id.* at 855. **Two primary factors are considered in "determining whether or not an intrusion which effects access to private information is actionable. The first is the means used. The second is the defendant's purpose for obtaining the information."** *Id.* at 856.
>
> Before deciding whether there was an offensive or objectionable prying or intrusion, **we must decide whether the thing ... into which there was an intrusion or prying must be, or is entitled to be, private.**
>                                          ***
> ...We find nothing in the purpose of the inquiry ... that would support an action for invasion of privacy...
>
> The only question, then, is **whether the means used were offensive or objectionable. .... Was the method of inquiry .... objectionable**? ... Was the method of inquiry ... objectionable?
>
> Neither of the actions described .... taken alone, is unreasonable or objectionable enough to rise to the level of an invasion of privacy. However, **when taken together ...** we agree that **a factual issue did exist** as to whether the means used

---

8 Finding a wrongful intrusion into a plaintiff's privacy when there was an abrupt, offensive, and objectionable prying into information entitled to remain private.

were improper, offensive, and unreasonable. ... summary judgment was improper on the invasion of privacy claim.

As summarized in <u>Majdalani v. Auburn Univ</u>., 2022 WL 4596349, *14 (M.D. Ala. Sept. 7, 2022):

> To prove this type of invasion of privacy, Plaintiff must show that Defendants "intentionally intrude[d], physically or otherwise, upon [his] solitude or seclusion ... or his private affairs or concerns" in a manner that "would be highly offensive to a reasonable person." *Johnston*, 706 So. 2d at 702 (quoting Restatement (Second) of Torts § 652B (Am. L. Inst. 1977)). The Supreme Court of Alabama has acknowledged examples of intrusion upon seclusion including "wiretapping or eavesdropping" and "opening private mail or examining a private bank account." *Id.* (quoting Restatement (Second) of Torts § 652B cmt. b (Am. L. Inst. 1977)). The Restatement, which the Alabama Supreme Court has relied upon, notes further examples, including "searching [a man's] safe or his wallet ... or compelling him by a forged court order to permit an inspection of his personal documents." Restatement (Second) of Torts § 652B cmt. b (Am. L. Inst. 1977). The Alabama Supreme Court has added, "[I]f the means of gathering the information are excessively objectionable and improper, a wrongful intrusion may occur." *Id.* (citing *Hogin v. Cottingham*, 533 So. 2d 525 (Ala. 1988)).

<u>See</u> <u>also</u> <u>e.g.</u>, <u>March v. Best Buy Stores, LP</u>, 111 F.Supp.3d 1236 (N.D. Ala. 2015) (same).[9]

---

9 As explained in THE RESTATEMENT (SECOND) OF TORTS, § 652B cmt. a-d (Mar. 2023 Update):

> *a*. The form of invasion of privacy .... consists solely of an intentional interference with his interest in solitude or seclusion, either as to his person or as to his private affairs or concerns, of a kind that would be highly offensive to a reasonable man.

> *b*. The invasion may be .... be by the use of the defendant's senses, with or without mechanical aids, to oversee or overhear the plaintiff's private affairs ... It may be by some other form of investigation or examination into his private concerns, as by opening his private and personal mail, searching his safe or his wallet, examining his private bank account, or compelling him by a forged court order to permit an inspection of his personal documents. The intrusion itself makes the defendant subject to liability, even though there is no publication or other use of any kind of the photograph or information outlined.

> *c*. ... defendant is subject to liability ... only when he has intruded into a private place, or .. otherwise invaded a private seclusion ... plaintiff has thrown about his person or affairs...

> *d*. There is likewise no liability unless the interference with the plaintiff's seclusion is a substantial one of a kind that would be highly offensive to the ordinary reasonable man, as the result of conduct to which the reasonable man would strongly object....

Specifically then, "[t]he tort of invasion of privacy/intrusion requires a plaintiff to allege and prove '[1] the intentional wrongful intrusion [2] into the [plaintiffs'] private activities [3] in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities.'" Carter v. Innisfree Hotel, Inc., 661 So.2d 1174, 1178 (Ala. 1995) (citation omitted). See also Rosen v. Montgomery Surgical Ctr., 825 So.2d 735, 737 (Ala. 2001) (same). This claim "can arise out of remarks about private matters made to a third party." Sorrells v. Lake Martin, Inc., 2011 WL 627049, *6 (M.D. Ala. Feb. 11, 2011) (citing *Logan v. Sears, Roebuck & Co.,* 466 So.2d 121, 123 (Ala.1985) and finding an employer's communication to management and employees that the plaintiff had AIDS, which was inaccurate, supported an actionable invasion of privacy wrongful intrusion claim which survived summary judgment). "[O]ne may invade another's privacy through either an intrusion upon a physical space or by an invasion of one's 'emotional sanctum'; the law prohibits a wrongful intrusion into either of these areas of privacy. *Phillips,* 435 So.2d at 711." Kelley v. Worley, 29 F.Supp.2d 1304, 1311 (M.D. Ala. Dec. 14, 1998). "[T]o qualify as wrongful intrusion, information need not be acquired 'surreptitiously' or 'clandestinely' from the plaintiff, *Phillips,* 435 So.2d at 709–710 ...*"* Shows v. Morgan, 40 F.Supp.2d 1354, 1362-1363 (M.D. Ala. 1999). "To withstand a motion to dismiss, a plaintiff may allege a ... 'an invasion of psychological solitude,' or 'examination into [the plaintiff's] private concerns' -- so long as the plaintiff also asserts that the invasion would be offensive to a reasonable person. *Phillips,* 435 So.2d at 710–11, quoting Restatement § 652B cmt. a." Hope v. BSI Fin., Inc., 2012 WL 5379177, *5 (N.D. Ala. Oct. 26, 2012) (finding the claim facially plausible).

In the proposed Second Amended Complaint, Plaintiffs' invasion of privacy allegations include that Austal wrongfully subjected them to intrusive medical testing; gained unauthorized,

unlawful, and unwanted access to their private confidential medical data/records/information; obtained, collected, disseminated, and failed to safeguard their private confidential medical data/records/information; monitored their private communications; eavesdropped on private conversations with other employees and when they used their personal telephones, computers, etc.; and surveilled them. Plaintiffs also allege that from that, Austal "compiled" this information into reports to discuss and disseminate to other employees at the Austal facility as a means to isolate, ostracize, coerce, and compel the Plaintiffs and to implement a "vaccinated logo-sticker" program (vaccinated employees wore a vaccinated sticker on their hard hat thereby identifying the unvaccinated Plaintiffs who lacked a sticker (involuntarily communicating confidential medical information)). Additionally, Plaintiffs Daw, Jordan, and Beck assert specific allegations surrounding their respective invasion of privacy claims: 1) Daw was forced to ask employees about their medical information, record who was unvaccinated, and provide a list of employees with disabilities in opposition to vaccination; 2) Jordan was terminated by Austal for noncompliance with the vaccination policy even though he received a medical exemption; and 3) Beck was individually questioned by Austal leaders about his vaccination status, at work in front of others, over the phone while not at work, and within group settings as well as asked by leadership to track employee vaccination percentages. Moreover, the allegations are asserted on behalf of all Plaintiffs, and identify or describe sufficient facts/information "to raise a reasonable expectation that discovery will reveal evidence" regarding the allegations (acts by management, being targeted in meetings, non-voluntary isolation from others on their work crew) and provide examples (logo sticker involuntarily revealing their unvaccinated status). Further, "[a]ll Plaintiffs contend they ... were subjected to Defendant's pervasive intrusions and harassing actions to ensure compliance"

35

with the COVID-19 vaccination mandate.  Finally, all Plaintiffs allege outrage, mental suffering, shame, and humiliation, and that Austal intruded into their private medical affairs.

Upon consideration, and because the factual allegations in the proposed amended complaint are taken as true and viewed in the light most favorable to Plaintiffs at this juncture, the Court is satisfied that Plaintiffs have alleged sufficient information to support the facial plausibility of their invasion of privacy (intrusion upon seclusion/solitude) claim. See, e.g., Hughes v. Wal-Mart Stores, East LP, 2018 WL 3352974, *5 (M.D. Ala. June 12, 2018) ("Plaintiff bases this claim upon .... Defendants discussing Plaintiff's alleged unfitness with her coworker and in front of Wal-Mart customers ... [and] ... Defendants discussing information regarding Plaintiff's health, including the status of her prescriptions for pain medication, with her co-workers ... the Court concludes that Plaintiff states a claim for invasion of privacy based upon intrusion, or a claim for intrusion upon seclusion, ...plead sufficiently to survive Defendants' Motions to Dismiss[;]" Drew v. Quest Diagnostics, 992 F.Supp.2d 1177, 1188 (N.D. Ala. 2014) (footnote omitted) ("[t]o support their invasion of privacy claim, plaintiffs allege that defendants 'committed a wrongful intrusion upon the Plaintiffs' solitude or seclusion by improperly disclosing untrue and incorrect health information, namely Kenneth Drew's HIV status and Herpes status[]' ... they assert that the claim is based upon the improper disclosure of 'untrue and incorrect health information,' and that is indeed what the Amended Complaint alleges.[] The court agrees that the invasion of privacy claim can proceed based upon the disclosure of incorrect information[]").[10] Thus, it is **ORDERED** that

---

10 Cf. Franks v. Indian Rivers Mental Health Ctr., 2012 WL 4736444 (N.D. Ala. Sept. 30, 2012) (discussing a plaintiff's invasion of privacy claim based on her allegation that her private medical information was accessed unlawfully, but granting summary judgment on her claim because she "ha[d] no evidence" that anyone other than the authorized doctor had "viewed her medical records" and her "suspicions are not sufficient"); Baldwin v. Cross, 2005 WL 8155900 (N.D. Ala. Sept. 13, 2005) (internal

Plaintiffs' motion to amend, as to the Alabama invasion of privacy claim for intrusion upon seclusion or solitude, is **GRANTED.**

## V.   <u>Conclusion</u>

It is **ORDERED** that Plaintiffs' motion for leave to file a Second Amended Complaint (Doc. 94) is **GRANTED in part** and **DENIED in part** as set forth *supra*.  It is further **ORDERED** that Plaintiffs shall file, on or before **June 16, 2023,** a new Second Amended Complaint which

---

citations omitted) (In Alabama, "[t]here must be something in the nature of prying or intrusion and the intrusion must be something which would be offensive or objectionable to a reasonable person. The thing into which there is an intrusion or prying must be, and be entitled to be, private[,]'" and it is "the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities[]" -- finding "the incidents in this case are not sufficiently extreme or intrusive to constitute an actionable claim for invasion of privacy ...There is no allegation that Head pried or intruded into plaintiff's private affairs ....").

<u>See also</u> <u>e.g.</u>, <u>Darcangelo v. Verizon Comms., Inc.</u>, 292 F.3d 181, 188-189 (4th Cir. 2002) (emphasis in original) (in concluding that an invasion of privacy claim based on improperly obtained confidential medical information survived a motion to dismiss, "we read Darcangelo's complaint as alleging that CORE solicited her private medical information for the *sole* purpose of helping Verizon establish that she posed a sufficient threat to her coworkers to warrant her discharge[]" and "Darcangelo alleges that CORE's solicitation of her medical information from third parties was not justified by any purpose that would result in legitimate use of the information[]"); <u>Hooper v. United States</u>, 2013 WL 5530603, *5 (D. Or. Sept. 25, 2013) ("a plaintiff's medical records are considered private, and the unauthorized access or disclosure of the records is an intrusion on seclusion[;]" <u>Hamilton v. Black Hills Corp</u>., 2007 WL 9724267, *2 (E.D. Tex. Sept. 26, 2007) (finding --when evaluating a common law intrusion into seclusion claim similar to that in Alabama -- plaintiffs satisfied their Rule 12 motion to dismiss burden of pleading a cause of action for invasion of privacy for solitude or seclusion because the defendant "provided the ... medical information of the plaintiffs to Sunoco and Sunoco used that information to discriminate against plaintiffs on the basis of their ... medical conditions[]"); <u>French v. United States ex rel. Dep't of Human Health and Human Serv.</u>, 55 F.Supp.2d 379, 382–384 (W.D.N.C.1999) (plaintiff stated an intrusion on seclusion claim because "Plaintiff had every expectation of privacy in her medical records and wrongfully obtaining and using those records would be highly offensive to a reasonable person[]" -- "Plaintiff's allegation that Lossiah intentionally obtained and disclosed her confidential medical records without her permission to insure she would not be offered employment constitutes extreme and outrageous conduct. The conduct was a severe intrusion into her medical record[;]" <u>Anderson v. Farr Assocs., Inc.</u>, 1997 WL 896407, *4 (M.D.N.C. Dec. 12, 1997) (plaintiff stated an intrusion claim by alleging his employer "forced him to participate in group sessions and evaluations which resulted in his disclosure of deeply personal information"); <u>Toomer v. Garrett</u>, 574 S.E.2d 76, 90 (N.C. Ct. App. 2002) (concluding -- when considering a common law intrusion into seclusion claim similar to that in Alabama -- that unauthorized examination of the contents and information contained in an employee personnel file such as medical history, testing data, etc.--"especially where it includes sensitive information such as medical diagnoses .... like the unauthorized opening and perusal of one's mail, would be highly offensive to a reasonable person[]").

complies with the instructions herein and is in **<u>strict</u>** keeping with the rulings in this Order. Thereafter, the Second Amended Complaint shall be **REFERRED** to the U.S. Magistrate Judge in light of Austal's pending Motion to Dismiss for which briefing is now complete.

      **DONE** and **ORDERED** this the **7th** day of **June 2023.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**