# Attachment A

1        IN THE UNITED STATES DISTRICT COURT

2            SOUTHERN DISTRICT OF ALABAMA

3                  MOBILE DIVISION

4

5

6    ABBOTT, et al.,                    )
                                        )
7          Plaintiffs,                  )
                                        )
8    versus                            )   Case No. 22-cv-267
                                        )
9    AUSTAL USA, LLC.,                  )   MOTION HEARING
                                        )
10         Defendant.                   )   March 22, 2024
     _____)

11

12              TRANSCRIPT OF PROCEEDINGS

13        BEFORE THE HONORABLE JUDGE WILLIAM E. CASSIDY

14              UNITED STATES DISTRICT JUDGE

15

16

17   .
     .
18   .
     .
19   .

20   SUSAN A. ZIELIE, FCRR, CVR-CM-S
     FEDERAL OFFICIAL STENOGRAPHIC COURT REPORTER
21   United States District Court
     Souther District of Alabama
22   155 Saint Joseph Street
     Mobile, Alabama 366075701
23   903-590-1065
     susan_zielie@txed.uscourts.gov

24

25

```
 1
 2
 3                                    APPEARANCES
 4
 5    For Plaintiff ABBOTT, et al:
 6    BRIAN ANTON DASINGER, ESQ.
 7
 8
 9    For Defendant AUSTAL USA:
10    KATHRYN M. WILLIS, ESQ.
      MATTHEW JOHN BAUER, ESQ.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

| | |
|---|---|
| 1 | MOBILE, ALABAMA; FRIDAY, MARCH 27, 2024. |
| 2 | 9:00 A.M. |
| 3 | THE COURT: Please be seated. |
| 4 | JUDICIAL ASSISTANT:  We are on the record for oral |
| 5 | argument in Civil Action 22-267, Abbott versus Austal. |
| 6 | Is the plaintiff ready? |
| 7 | ATTORNEY DASINGER:  Yes, ma'am. |
| 8 | THE COURT:  Is defendant ready? |
| 9 | ATTORNEY WILLIS:  Yes. |
| 10 | THE COURT:  Okay.  We're here today, as previously |
| 11 | ordered, for a hearing on two motions that are pending that |
| 12 | were presented by the defendant.  And, depending on how this |
| 13 | goes, please stay in your seats and we'll let you speak into |
| 14 | the microphones at your desk, instead of having to stand up. |
| 15 | Because I'll be asking questions during this proceeding and I |
| 16 | know there's significant amount of paperwork that's involved, |
| 17 | so I don't think standing when you speak is absolutely |
| 18 | necessary in this case, and we'll be talking about some |
| 19 | preliminary matters. |
| 20 | One of the preliminaries that I wanted to go over |
| 21 | with you is I have asked for a court reporter to be present |
| 22 | today so that we'll have early access to the transcript of |
| 23 | this proceeding because it is my hope to resolve these |
| 24 | motions and also to resolve lingering discovery issues that |
| 25 | we've been trying to resolve through a mediation process that |

1    has not worked.  And so it's now time to address the issues

2    that remain in the discovery process, to take up the question

3    of attorney fees and costs, and to move into the next phase

4    of discovery, and we'll be doing that today.  That is my

5    plan.

6            One other preliminary is that there was a request

7    this morning about, 7:30, Mr. Dasinger, to allow Mr. Mertle

8    to appear by telephone.  That was not the intent of this

9    hearing to have someone on the phone --

10           ATTORNEY DASINGER:  Yes, sir.

11           THE COURT:  -- that may not be able to hear

12   clearly, who will not have access to any of the materials

13   that are here in the courtroom.

14           And it also comes in the face of there was a

15   request by opposing counsel to move the hearing to

16   accommodate Mr. Kavanagh, and that was denied based on your

17   objection.

18           So, for those reasons, especially with the late

19   notice, we're not going to allow any telephone participation

20   today in this hearing.

21           ATTORNEY DASINGER:  Yes, sir.  We're prepared to go

22   forward without him.

23           THE COURT:  Now, the other item I wanted to discuss

24   with you is to try to get a handle on actions that have taken

25   place since these motions were filed.  I see that there's

1   been some supplemental filings regarding initial disclosures

2   by both parties, and so my first question in a hearing like

3   this is to try to determine if there have been any actions

4   taken or negotiations completed that have resolved any of the

5   issues that were raised in the two motions.

6          Ms. Willis?

7          ATTORNEY WILLIS:  Your Honor, we've not had any

8   additional discussions regarding the pending motion.

9          You are correct, I think the parties -- in

10  accordance with that superseding scheduling order submit

11  supplemental disclosures.

12         THE COURT:  All right.  Those having to do with

13  issues other than the discovery issues that are before me

14  today?

15         ATTORNEY WILLIS:  The disclosures?

16         THE COURT:  The documents.

17         Were they in the form of documents?  Or witness

18  lists?

19         ATTORNEY WILLIS:  In the form of the 26A pleading

20  type document, yes.  Listing of witnesses and listing of

21  documents or identification of documents that had already

22  been exchanged that needed to be delineated.

23         THE COURT:  All right.

24         And have been some attempts to provide information

25  that was the subject of your Motion to Compel?

1          ATTORNEY WILLIS:  Your Honor, there were.  I think,

2    as set out in the plaintiff's responses, we did get some

3    additional discovery on February 14 from the plaintiffs,

4    including, I know we got two separate motions, one regarding

5    those that did not initially respond and then the other

6    regarding the substantive objections.  We did get it for the

7    ones that did not respond or had not responded since October

8    of 2023.  And then we did get, I guess, what you would call

9    or what we could call supplemental, with removing some of the

10   objections but not all of them.

11         THE COURT:  Okay.  And what impact do you think

12   that activity has had on your Motion to Dismiss for Failure

13   to Prosecute?  And I need an explanation as to the scope of

14   that motion.

15         ATTORNEY WILLIS:  Right.  Well, Your Honor, I think

16   we're here today on the scope of that motion because we

17   understood from our February 8 telephonic conference with the

18   Court that dismissing for failure to prosecute was not really

19   on the table.  That you were going to give those plaintiffs

20   an opportunity to respond or issue an order; and then,

21   failing to do so, then take that step.

22         So we, on that particular motion, at this point,

23   are not seeking to dismiss those plaintiffs, especially in

24   light of the fact that they've respond, albeit delayed and

25   albeit after the telephonic conference and the motions being

1    filed.

2           So the scope of that motion, to answer your

3    question, is simply the basis of the compelling part and

4    attorneys fees and costs.

5           THE COURT:  All right.  So how would you summarize

6    your goals today from your perspective, your client's

7    perspective?

8           ATTORNEY WILLIS:  That's a great question.

9           Number one, we do believe that we are entitled to

10   fees and costs on both of the two motions.  And that is one

11   goal.

12          Another goal is that, with the discovery that we do

13   have, there are some lingering issues that I feel like we

14   could -- if we could get some objections removed or some

15   clarification on a couple of things, I think that would be

16   good.  And I can get to more specifics or you can stop me

17   now.

18          First of all, there are some responses -- well,

19   first of all, plaintiffs continue to maintain this overall

20   objection that says plaintiff's responses do not waive the

21   objections that are delineated and identified within the

22   objections made on plaintiff's first provision of such

23   responses to defendant's counsel on November 16, 2023, and

24   supplemented on November 20, 2023.

25          And, as the Court may recall, the first set of

1    discovery responses that we received back on November 16 and

2    then on November 20 were all objections.  There were no

3    substantive responses.  And so we'd like to get those, that

4    overarching adoption of those objections removed and

5    confirmed, in so doing that nothing's being withheld on the

6    basis of such objections but they still exist.  So we'd like

7    to do that.

8          We also still have some issues with document --

9    like Mr. Kavanagh outlined in his March 7 email, it's unclear

10   in many cases have we been given documents or not.  Because a

11   response typically, for example, to a request for production

12   would be:  There are no documents in my possession that is

13   requested in the present discovery question.  Any requested

14   documentation has already been provided or I've never been in

15   possession of such requested documentation at any time.

16         So that sort of begs the question:  Is there a

17   document, isn't there a document; and, if you are saying,

18   plaintiff, that you have provided it, where is it?  Because

19   it's our understanding of Rule 34 and the local rule that you

20   have got to identify it in some form or fashion.

21         Particularly, in this case, with the number of

22   plaintiffs and the number of documents, it would be most

23   helpful if we could get it by Bates Number, because we do

24   understand that that is the requirement.

25         Then we've got -- so, I guess, remove the general

1   objections, get some kind of clarification or clearing up on

2   that somewhat ambiguous response or pretty ambiguous

3   response.

4           Then, Your Honor, there are a couple of what I

5   would call almost contention interrogatories that -- and, if

6   we need to work this out at some other point, we can -- but

7   that we have not really gotten a response to.  When I say

8   contingent interrogatories, I mean things about stating

9   information about what you say constitutes an invasion of

10  privacy and the who, what, when, where kind of stuff.  And we

11  have not gotten, really, substantive responses to that.

12          And I will give the Court an example of that.  Let

13  me get to that.  I'll give the Court an example.  Just one

14  moment.

15          We previously had, like, Interrogatory 19:

16  Describe in detail each action, comment, omission, activity

17  or inactivity which you contend invaded your privacy and

18  state the date.  It's the who, what, when, where.

19          And what we have gotten is -- what we've gotten in

20  response to that, which I think is a key question, some

21  plaintiffs have said simply:  Asking me for my vaccine status

22  is a violation of my privacy; not accepting my religious

23  exemption is also an invasion of privacy.

24          Okay, well, that doesn't really -- we're trying to

25  get that type of information in advance of depositions so

1  that we're not belaboring.  You know, that we can be a little

2  bit more efficient, especially in what we anticipate to be an

3  aggressive schedule.  So we've got those types issues.

4           So, I would say, the goals today, just to go back

5  and summarize, is, one, fees and costs.

6           Two, get some of these objections resolved.

7           Three, I know that it's not technically the subject

8  of a motion or up for oral argument today, but I know Your

9  Honor has had questions about depositions and moving forward,

10  and we want to get us in a position so that we can do that.

11           I sit here and I'm hesitant to say -- I don't think

12  we have truly fully responsive discovery responses with this

13  third set of discovery.  I don't know how much better it's

14  going to get, save for these other issues that I've already

15  identified for the Court.  So I don't know how much better

16  it's going to get, meaning I don't know that it's the best

17  use of our time under the superseding scheduling order to

18  say, no, you've got to respond again or something like that

19  before we get into depositions.

20           But I do need to be clear on, are we withholding

21  documents based on these improper objections, are there

22  documents or aren't there, are you going to be able to give

23  me some more -- you know, I think we could address that more

24  specific information in response to some of these contingent

25  type interrogatories.

1          And, really, too, I think it would be productive,

2     if the Court is willing to entertain it today, to kind of get

3     some guard rails and ground rules because this is a lot of

4     depositions that we're about to undertake.  We are a bit

5     concerned that improper objections had been made and held on

6     to up to this point, and we want to be clear we're all on the

7     same page about objections to form and so that we're not

8     calling Your Honor or requesting telephonic conferences every

9     week or every other week, because we've got to get it moving

10    forward.  So I think that, too, Your Honor, would be another

11    goal.

12          THE COURT:  Okay.

13          Now, Mr. Dasinger, one of the things I wanted to

14    make clear in this record is the manner in which -- is the

15    methodology that's been employed here with your clients.

16          And, just to restate where we are, this is the

17    discovery process in four separate cases, and those cases

18    have not been consolidated.  I know, in your briefing, you

19    use the word plaintiff's class.  It's not a class.  They're

20    individual plaintiffs with individual claims, and I would

21    assume individualized damages, which is a lot of individual

22    cases in the same lawsuit, which is fairly atypical, in my

23    experience.

24          And in responding to the discovery -- and we talked

25    about this in our conferencing previously, and I don't know

1    that we dug deep into this issue -- and that is the format

2    that the response that I saw, and maybe it was the first

3    response, was what was called either a consolidated or

4    composite response.  And it look like, to me -- and just for

5    the record, these four cases are 22-0267, 22-0328, 22-0329,

6    and 23-040.  There are the responses.

7              And then there are -- and how many clients do you

8    have?  62?

9              ATTORNEY DASINGER:  Including Mr. Franklin, it

10   would be 62, Your Honor.

11             THE COURT:  And so then you have got 62 electronic

12   signatures below these, and what really is important is

13   answers to interrogatories.

14             And so my question to you:  Am I understanding that

15   every response is the same to every interrogatory or request

16   for production of documents?

17             ATTORNEY DASINGER:  No, sir.

18             THE COURT:  So how would one determine the

19   differences in a composite response?

20             And I believe -- I've looked at that first

21   response, and there was no substantive response in it at all.

22             ATTORNEY DASINGER:  When you refer to the first

23   response, are you talking about in November?

24             THE COURT:  I am.

25             ATTORNEY DASINGER:  Of 2023?  Yes, sir.

1      THE COURT:  Isn't that a little unusual, that every
2  request for production, every interrogatory is objected to,
3  without a substantive --
4      ATTORNEY DASINGER:  Yes, sir.  But those have been
5  corrected, Your Honor, by our responses to Austal's first
6  Motion to Compel and their second Motion to Compel.
7      THE COURT:  And tell me how that process works.
8  Who produced that document and filed it with the Court?  Was
9  that one of your staff members?
10      ATTORNEY DASINGER:  Yes, sir.  Multiple staff
11  members.
12      THE COURT:  So where is the sworn statement by each
13  client, or even a certification by each client under the
14  statute?
15      ATTORNEY DASINGER:  Your Honor, it's my
16  understanding that they all had sworn affidavits attesting to
17  their individual answers.
18      THE COURT:  That they filed?  Or served on opposing
19  counsel?
20      ATTORNEY DASINGER:  I'm sorry, I'm not
21  understanding exactly what you're asking, Your Honor, and I
22  don't want to misspeak.
23      THE COURT:  Rule 33 requires an answer under oath.
24  Right?
25      ATTORNEY DASINGER:  Yes, sir.

1           THE COURT:  Okay.  And you can also use the statute

2    instead of a notarized document.  Right?

3           ATTORNEY DASINGER:  Yes, sir.

4           THE COURT:  So where would those oaths be if I were

5    looking for them?  Where would the opposing counsel be able

6    to rely on the fact that these are sworn answers that they

7    can utilize in a deposition or going forward in the case at

8    trial?

9           ATTORNEY DASINGER:  Your Honor, it's my

10   understanding that we got every one of our clients to sign a

11   sworn affidavit and that was filed.

12          THE COURT:  Filed in this record?  You don't

13   usually file discovery responses unless it's with a motion.

14          The one I'm looking at -- Ms. Willis, can you help

15   me out here -- did you receive oaths to the responses, sworn

16   answers to the responses to the written interrogatories?

17          ATTORNEY WILLIS:  What we got -- and I'm looking at

18   one dated March 4 -- well, it was attached to a motion.  I'm

19   sorry.  It wasn't dated March 4.  It says Verification as to

20   Interrogatories, and it has a printed name, and I'm looking

21   at one of the plaintiffs, Christopher Colvin, for the Court

22   and the record's reference, and it has a signature, and it's

23   just electronic.  It says:  Christopher Colvin signed with

24   consent.  It's not like an eSign or DocuSign.  The date on

25   this particular one is 1/11/24, and it's entitled

1    Verification as to Interrogatory.  So that's what we've

2    received.  It's not an affidavit, though, to be clear, for

3    the record.

4              THE COURT:  Is it a declaration under 17 --

5              ATTORNEY WILLIS:  Under the statute?

6              THE COURT:  -- 1746.

7              ATTORNEY WILLIS:  I question that.

8         If I may read into the record what this says, for

9    purposes of clarity for the Court?

10             THE COURT:  Sure.

11             ATTORNEY WILLIS:  I, Christopher Colvin, the

12   undersigned individual, states they are authorized member of

13   the plaintiff's party and has provided and reviewed the

14   herein reference answers to defendant's third request for

15   interrogatories to plaintiffs, which such answers may be

16   based in part on information obtained from other parties and

17   upon reasonable inquiry.  Such answers are true and correct

18   to the best of their knowledge, information, and belief,

19   other than answers dealing with legal contentions, which are

20   exempted from this verification.  Each undersigned individual

21   verifies under penalty of perjury that the foregoing is true

22   and correct, executed this 11th day of January 2024.

23             And Your Honor asked the question:  Is that really

24   under the statute?  I've done a little looking about -- I

25   guess, there are two issues there.  Is I'm not sure -- it

1    says it's electronically signed.  I don't know if that meets

2    the standard under Rule 33.  I don't know that this really

3    qualifies as an electronic signature.

4         And is it really a declaration?  I guess my other

5    concern I would raise about that is it sounds like it's

6    verifying, going back to what Your Honor noted about, like,

7    as to a class or as to a group versus somebody's individual

8    answers.

9         THE COURT:  It's certainly more that is required in

10   statutory form, and it sounds like it's being inconsistent.

11   In one breath, you're saying that, based on information

12   provided to me by someone else, as I understood the reading,

13   and based on my information and belief.  But then, at the

14   very end, it uses the statutory language that:  I declare

15   under penalty of perjury that these responses are true and

16   correct.

17        So how do I take that?  Is that a qualified

18   declaration or a qualified oath?

19        ATTORNEY DASINGER:  Your Honor, I assure you that

20   we -- our research determined or we came to the determination

21   that we were being in compliant with the Federal Rules of

22   Procedure, and we have gotten verification from each one of

23   our clients to file each one of their answers.

24        If the Court is not satisfied with the verification

25   that was just read, I mean, we can certainly do whatever else

1    would satisfy the Court.

2              THE COURT:  So what you're telling me is that, if

3    they are deposed and they are shown the answers to their

4    written interrogatories, that they are going to be able to

5    tell opposing counsel that, yes, they looked at those

6    questions and those are their answers that they filed under

7    oath or penalty of perjury?

8              ATTORNEY DASINGER:  Absolutely, Your Honor.  We

9    have verified --

10             THE COURT:  And did the give you the consent to

11   sign their names --

12             ATTORNEY DASINGER:  Absolutely.

13             THE COURT:  -- to those responses?

14             ATTORNEY DASINGER:  Absolutely, Your Honor.

15             THE COURT:  Okay.

16             Is that in writing or is that an oral consent?

17             ATTORNEY DASINGER:  We do have those in writing

18   from each one of our clients, Your Honor.

19             THE COURT:  Okay.  Now, let's get to the format of

20   responding.  Your response was the same for each of the 62,

21   or were there distinctions made in the responses?

22             ATTORNEY DASINGER:  Well, Your Honor, the same for

23   each one -- I mean, they all had -- I mean, are you stating

24   that the same for one question?

25             THE COURT:  I'll give you an example.  If I'm

1   asking -- one of your claims is for emotional distress;

2   correct?

3            ATTORNEY DASINGER:  Yes, sir.

4            THE COURT:  Is that as to each of your clients?

5            ATTORNEY DASINGER:  Yes, sir, Your Honor.

6            THE COURT:  Okay.  And that raises the issue of

7   what is their condition previolation of their rights and

8   post-violation of their rights.  Would that be reasonable?

9            ATTORNEY DASINGER:  Yes, sir.  I can certainly see

10   that.

11            THE COURT:  And if they're asking what their

12   condition was or who their caregivers were, which is a normal

13   interrogatory when those types of issues have been raised by

14   plaintiff, how would they all be able to give the same

15   answer?

16            ATTORNEY DASINGER:  Your Honor, we did get a lot of

17   different answers, and a lot of those answers were inadequate

18   to meet the rules.  Therefore, there are some questions that

19   we put together and basically asked them, you know, if they

20   adopted these answers.  You know, if this was consistent, you

21   know, with what their situation is.  And, for each one of

22   those clients or each one of those answers that you state

23   that are the same, they all looked at and endorsed, you know,

24   us to answer that way.

25            THE COURT:  And, when you're asking for relevant

1   documents that might be applicable in this case, how did you

2   -- procedurally, how did you distinguish between the 62

3   plaintiffs and the production of documents?

4          ATTORNEY DASINGER:  Can you give me an example?

5          DEFENSE ATTORNEY:  Did they all have -- I assume

6   some would have different documents that were requested.

7          ATTORNEY DASINGER:  Your Honor, I mean, yes.  And

8   like the example that Ms. Willis read, if there are documents

9   or we specifically asked each one of our clients if there are

10  documents, you know, pertaining to this question, they have

11  turned over any documents to us that pertained to those

12  questions, and we have turned over all of the documents that

13  we have gotten in our possession.

14         THE COURT:  And how did you identify the documents

15  coming from each individual plaintiff?

16         Did you disclose them in a bunch, without

17  designation?  Or did you supply those documents in a form

18  where they could be related to or referenced to a particular

19  plaintiff?

20         ATTORNEY DASINGER:  Yes, sir.  We can identify each

21  document according to or pertaining to a particular client.

22         THE COURT:  And that's the way they were produced?

23         ATTORNEY DASINGER:  Yes, sir.

24         THE COURT:  And how were they identified?

25         Were they Bate-stamped?

1      ATTORNEY DASINGER:  Bate-stamped before being

2  turned over to the defense?

3      THE COURT:  I assume that would be right.

4      How do you keep up with them?  How do you keep up

5  with the designation between client and documents?

6      ATTORNEY DASINGER:  We have individual files on

7  each client.  So the answers that are produced and the

8  documents that are produced for those clients go into their

9  file.

10      THE COURT:  So that's the way they were copied and

11  given to opposing counsel, you just copied those files, put

12  them in a plaintiff's individual file folder, and made those

13  available to the defense?

14      ATTORNEY DASINGER:  Your Honor, we did not

15  Bate-stamp each and every -- you know, Bates label each and

16  every document.

17      But each and every document that was produced

18  should have -- it should have been clear to the defense that

19  it was pertaining to, you know, particular plaintiffs.

20      THE COURT:  How would it be clear to opposing

21  counsel?

22      [DISCUSSION HELD OFF THE RECORD]

23      THE COURT:  How would opposing counsel know that

24  the documents related to a particular plaintiff?

25      ATTORNEY DASINGER:  As far as I know, Your Honor, I

1   believe that they are -- these were basically -- Your Honor,

2   I mean, I really would have to ask Michael about this.

3          THE COURT:  Well, one of the allegations being made

4   is that you refer to documents already produced but you don't

5   identify the documents you're referring to.

6          ATTORNEY DASINGER:  Your Honor, it's our

7   understanding that we're not required to produce Bates labels

8   on each one of our documents.  So, if there is any question

9   as to a particular document pertaining to a particular

10  client, we could certainly answer that.  But that is not a

11  question that we have received, to my knowledge.

12         THE COURT:  So you are supposed to produce the

13  documents in the format in which they're kept; right?

14         ATTORNEY DASINGER:  Yes, sir.

15         THE COURT:  And so you've got individual

16  plaintiffs.  And so, if those plaintiffs are in possession of

17  those documents that are responsive to a document request,

18  then you would have that document or those documents

19  presented for that plaintiff; correct?

20         ATTORNEY DASINGER:  Yes, sir.

21         THE COURT:  And the other side, if they wanted, to

22  could stamp them and identify them as relating to a response

23  from that particular plaintiff.

24         Is that what happened in this case?

25         ATTORNEY DASINGER:  Your Honor, it's my

1    understanding that it was made clear which documents were

2    pertaining to which plaintiffs.

3            THE COURT:  Okay.  And do you know how that was

4    made clear?

5            ATTORNEY DASINGER:  I don't, Your Honor.

6            THE COURT:  All right.

7            And would you say that, in going through these

8    objections, that all the objections were made, the same

9    objections were made on behalf of every plaintiff, both

10   general and specific?

11           ATTORNEY DASINGER:  Your Honor, for some of the

12   answers, I would say there is standard language that we used,

13   which is very similar to the same language that was used by

14   the defense in answering our interrogatories.  I can go over

15   several examples of what they did, you know, that was the

16   same, across the board.

17           THE COURT:  Okay.  So you responded and then you

18   typed in all the names below the response.  Right?

19           And our form is that you put a response below the

20   interrogatory or below the request for production.  And

21   that's where you have your objections, your specific

22   objections and any response that you make.  Right?

23           ATTORNEY DASINGER:  Yes, sir.  That's my

24   understanding.

25           THE COURT:  And that's the format that you used.

1    You did that.

2           And then, at the bottom, you didn't do 62 separate

3    responses.  You did a composite response with 62 names signed

4    at the bottom.

5           So that means every response that was made, unless

6    specifically designated as to one particular plaintiff, would

7    be a response of everybody.

8           ATTORNEY DASINGER:  Your Honor, it's my

9    understanding that there was not the same answers for each

10   one of the 62 plaintiffs.  And that is not how we did it,

11   just, you know, stating the same exact answers for every one.

12   I reviewed several of them myself where there are particular

13   separate answers for particular plaintiffs and not just

14   signed off on, you know, the same carte blanche across the

15   board.

16          THE COURT:  But it was done in that manner in the

17   first response in November?

18          ATTORNEY DASINGER:  For the most part, Your Honor,

19   we understand that that was --

20          THE COURT:  Why did that happen?  Why was that

21   response produced without any substantive answers at all?

22          ATTORNEY DASINGER:  Your Honor, I deny that there

23   was no substantive answers at all, as has been categorized.

24          THE COURT:  Can you show me one?

25          Let's all look at document -- is it 151?

1          ATTORNEY WILLIS:  Your Honor, I think, if you're

2     asking about our first Motion to Dismiss for Failure to

3     Prosecute, that's 141.

4          And I believe the responses or the response to

5     which Your Honor was just referring are document 141-2.  It's

6     attachment B to that motion.

7          Your Honor is correct, the Motion to Compel

8     substantive responses was is 151.  I apologize.

9          But I do know that 141-2 does reference or does

10    have the responses that Your Honor is referring to.  It's

11    also at 151-2.

12          THE COURT:  141-2, filed on January 29, '24,

13    Plaintiff's Consolidated Responses To Defendant's Third Set

14    Of Written Discovery Requests.

15          ATTORNEY DASINGER:  Your Honor, if you can just

16    give me a second.

17          Which document is that, sir?

18          THE COURT:  It's 141-2.

19          [PAUSE IN PROCEEDINGS]

20          ATTORNEY DASINGER:  I'm having computer issues,

21    Your Honor.  I apologize.

22          ATTORNEY WILLIS:  Your Honor, we don't -- we've got

23    an extra copy, paper copy, if that would be easier.

24          THE COURT:  Would you like to look at the paper

25    copy?

1          ATTORNEY DASINGER:  Yes.  Yes, sir.

2          [PAUSE IN PROCEEDINGS]

3          ATTORNEY DASINGER:  What was the question again,

4    Your Honor?

5          THE COURT:  I'm looking for a substantive answer to

6    any interrogatories.  Some of these are fairly bland.  Or

7    requests for production of document.  I'm not even looking at

8    the request for admissions.

9          But I'm trying to find a substantive response.

10   And, that document, after being presented with those requests

11   in October, this was your response in November, without a

12   request for additional time.

13         [PAUSE IN PROCEEDINGS]

14         ATTORNEY DASINGER:  You Honor, all I can say is

15   that we realized that these were inadequate after a court

16   hearing and we corrected the documents in compliance.

17         THE COURT:  That's my question:  Why did it take a

18   court hearing to recognize that this was inadequate?

19         For instance, I'm just looking at one here now:

20   For plaintiffs Ross and Jordan, identify the alleged

21   disability for which you contend you were seeking a medical

22   exemption from Austal's vaccine mandate.

23         And your objection was:  All plaintiffs object on

24   the following grounds.

25         Now, why would all plaintiffs object to that

1   request when it only went to Jordan and Ross?

2          And the objections were the general objections and

3   then overly-broad, unduly burdensome, not properly limited in

4   time and scope and irrelevant to the claims and defenses of

5   the party.

6          Why would their disability be irrelevant?

7          ATTORNEY DASINGER:  Your Honor, all I can say is

8   that we had trouble getting answers out of a lot of the

9   clients.

10          THE COURT:  So what do you do when you have that

11   problem?

12          ATTORNEY DASINGER:  We did everything that we could

13   to remedy the problem.

14          THE COURT:  Well, you didn't ask me for more time;

15   did you?

16          ATTORNEY DASINGER:  At the time, we did not, Your

17   Honor.

18          THE COURT:  Okay.  Well, I think you've given the

19   defendants a leg up on their request for attorney fees

20   because it took a hearing before me before we got to the

21   point to where y'all were ready to make additional responses.

22          This is not appropriate, and I think I told you

23   that in conferencing.

24          Okay.  That's the other thing I wanted to talk to

25   you about.  I believe, in the briefing that I've read, you

1    take issue with the fact that counsel for Austal has failed

2    to conference with you and to try to work out these discovery

3    problems without coming before the Court and asking for Court

4    assistance.

5           Now, as I recall, the way this case started, and my

6    participation in the case started, was with the Rule 16

7    conference and the entry of a phase one scheduling order.

8    And I can certainly go back and look at the record, but it is

9    my practice to talk to people about the fact that I'm going

10   to require you to ask for a conference with me before you

11   file any motions regarding discovery, any motions to compel,

12   any other pretrial motions that might be necessary to gain

13   compliance with the discovery process.

14           ATTORNEY DASINGER:  Yes, sir.

15           THE COURT:  And we engaged in that.

16           And, when y'all would ask me for a conference, we

17   would have a conference.  And I would try to give you my best

18   information, based on my experience, as to what needed to be

19   done to keep the discovery moving.

20           Now, we're at a point where I find that those

21   conferences have failed, to some degree.  But -- I don't know

22   exactly how many we've had -- but, under that set of

23   circumstances, not only have you had a chance to talk with

24   counsel but you've had a chance to talk with me.

25           So what's your position on the issue of whether or

1  not Ms. Willis or any of the other lawyers involved on behalf

2  of Austal have failed to conference with you before bringing

3  these two motions, which now are confined to ruling on

4  objections, clarification of responses, and a request for

5  additional information that has not been produced?  Is there

6  something they could have done, something else they could

7  have done to try to gain compliance with their request, their

8  discovery request?

9         ATTORNEY DASINGER:  Your Honor, each time that we

10  have written emails regarding what -- regarding our request

11  for either compliance or for, I guess, any kind of phone

12  conference that we've had before we filed anything, we've

13  typically gotten such answers from them as, you know,

14  defendant is not able or ready to proceed at this time, or,

15  you know, the Court has not ordered, you know, compliance at

16  this time.  It just seems like we're met with a brick wall

17  each time that we're trying to conference with them.

18         THE COURT:  Well, I was referring to, specifically,

19  these two motions that the defendant has filed, which they're

20  trying to get additional information that they believe

21  they're entitled to under discovery rules.  Have they not, in

22  fact, attempted to do that through conferencing before filing

23  their motions?

24         ATTORNEY DASINGER:  Yes, sir, I believe that they

25  have.  And I believe that we've complied with their

1  request.

2      THE COURT:  Okay.  So you feel like, today, you're

3  in compliance with their discovery requests?

4      ATTORNEY DASINGER:  Yes, sir.

5      THE COURT:  Okay.  All right.

6      Now, those are what I consider to be the

7  preliminary questions that I had, and I think I understand a

8  little bit more about the procedure that has taken place and

9  have confirmed my recollection of how we managed this case to

10  this point, which has not been very well, in my opinion.  So

11  now we'll get to the heart of the questions in the motions.

12      Now, we have utilized a procedure that's a little

13  unique, given the number of plaintiffs in this case, and we

14  varied from my traditional rule of stating each interrogatory

15  or request for production and the response or lack of

16  response thereto for consideration.  And you did present me

17  with a chart, I believe, in your second Motion to Compel.  Is

18  that the chart we're going to utilize in going through the

19  question of what has not been produced?

20      ATTORNEY WILLIS:  Your Honor, yes, that chart is

21  correct.

22      To that end, I will say, of course, after we filed

23  the motion, we got additional or substantive responses.

24      THE COURT:  Have you revised it?

25      ATTORNEY WILLIS:  I have not updated the chart but

1   I do have -- well, I do have -- we have identified what we
2   believe to be the remaining issues, if you will.  I can
3   pinpoint those, I think, fairly succinctly.
4           THE COURT:  Do you happen to have a paper copy of
5   that document?
6           ATTORNEY WILLIS:  Of the --
7           THE COURT:  The chart.
8           ATTORNEY WILLIS:  -- the chart.
9           Actually, Your Honor, I do have a paper copy.
10  That's because people are more on top of things than I am.
11          I have one paper copy, and I am happy to provide it
12  to you that summarizes the responses, or I can get a copy
13  made if I need to.
14          THE COURT:  Would you provide it to Tina and let
15  Tina make copies for me and for Mr. Dasinger.
16          ATTORNEY WILLIS:  Yes.  I apologize that I did not
17  come with multiple copies, but it has been updated as of
18  March 4.
19          THE COURT:  While she's doing that, let's talk
20  about objections.
21          Not having researched this for a while, and I know
22  I've been out of practice for a long time, tell me how this
23  works.  These general objections and the quid pro quo that
24  goes on between counsel, there's general objections and then
25  there's specific objections.  And then, many items you say,

1   notwithstanding the objection, here's the response.  So how

2   is the Court to treat that?  Mr. Dasinger, how does the Court

3   treat a multiple -- a document with multiple objections and

4   then a response is given?

5        ATTORNEY DASINGER:  Your Honor, we would just ask

6   that we be treated the same as Austal was treated in their

7   responses that were exactly the same, which I can read

8   examples of that.

9        THE COURT:  Well, as I recall, that was -- those

10  motions were denied on a timely basis.  They weren't denied

11  on the merits.

12        What I'm asking for is the practice.  How the

13  lawyers look at that when you're -- I don't care if it's

14  Austal imposing those types of objections.  But, in this

15  case, it's yours that we're talking about.  Okay?  So how do

16  you understand the Court should view that type of practice

17  when you've come in on a Motion to Compel?  Should I ignore

18  the objections because there's been a response given?  Or

19  sometimes I see we object but then it says we don't have any

20  documents, which causes me to wonder why there's an objection

21  in the first place.  How does the Court resolve those types

22  of responses to a discovery request?

23        ATTORNEY DASINGER:  Your Honor, I mean, of course,

24  we would defer to you on that, but we believe that we're

25  being compliant with the rules of discovery by providing the

1    answers.  However, we do reserve the right to argue it down

2    the road as to whether it would be relevant and admissible in

3    trial.

4              THE COURT:  So you're reserving the objections --

5              ATTORNEY DASINGER:  That's the way that we would --

6              THE COURT:  -- and producing the information.

7              ATTORNEY DASINGER:  That's the way that we would

8    like to treat it, Your Honor.

9              THE COURT:  For purposes of discovery, I can just

10   say that they're being reserved for use at trial.  Okay.

11             ATTORNEY DASINGER:  Or for possible determination

12   on whether they are admissible in trial.

13             THE COURT:  Okay.

14             Ms. Willis, what's your understanding of that type

15   of practice?  Is it a fail-safe practice?  Is it a

16   reservation of rights at a different hearing?  Or how should

17   the Court review an objection followed by a response?

18             ATTORNEY WILLIS:  I agree that, under the federal

19   rules, a party is entitled to pose objections that are

20   supported by the rules.

21             When we get a response, okay, great.  The concern

22   in this particular one that I see -- and perhaps you don't

23   want me to address that yet or maybe you're talking about a

24   general practice -- the concern that I see is that we're

25   continuing to adopt the objections from November as an

1   introduction to the most recent responses and/or we're not

2   getting clear responses.

3            So, is it practice, yes, that we see an objection

4   and then a response, yes.  This is not the first case that

5   I've seen that.  I think that is pretty standard, common

6   practice, here in the Southern District and in other

7   jurisdictions.  So that in and of itself is not --

8            I think what has been problematic here, initially,

9   I will say back be in November when we had he the November

10  16th responses, the November 20th responses, and then came

11  before the Court on December 6, yes, that's what we had.

12           THE COURT:  All right.  For the purposes of our

13  discussion today, if there's been a response made, I'm

14  disregarding the objections.

15           ATTORNEY WILLIS:  Right.  Because it's --

16           THE COURT:  And I'm looking to the substance of the

17  response and whether or not it is complete.

18           ATTORNEY WILLIS:  Correct.  Yes.

19           THE COURT:  Okay?  And whether it's directed to the

20  request.  All right.

21           Now let's talk about the objections that are still

22  causing the defendant a problem.  And, hopefully, I can

23  resolve those problems at this time.

24           So let's take them one-by-one.  How many do you

25  have that are creating a problem?

34

1        ATTORNEY WILLIS:  Currently, at this time -- and

2   I'll turn the Court's tension to the chart, and Mr. Dasinger,

3   too, to the chart that's been provided.

4        The primary one, the primary -- and it's not an

5   objection.  It's the nature of the response, Your Honor.

6   It's not so much an objection.  Is, when we get to, for

7   example -- in document request and requests for production,

8   the response of:  There are no documents in my possession

9   that are requested in the present discovery requests; any

10  requested documentation has already been provided; or I've

11  never been in possession of such requested documentation at

12  any time.  That's the response.

13       ATTORNEY DASINGER:  May I ask which response this

14  is for?  I'm sorry.

15       ATTORNEY WILLIS:  I'm getting to that.  I'm getting

16  to that.

17       If you look at our chart, Your Honor, we can look

18  at -- we could look at Dennis Abbott, we can look at Richard

19  Allan, both whom are on the first part of said chart.  And

20  it's abbreviated for purposes of the chart.  But if you'll

21  see, that response that I just read out to the Court is

22  present for Request for Production 1 through 12, 14 through

23  16, for Mr. Allen 23 through 28, and number 31.

24       And that is -- it's not -- for different

25  plaintiffs, it's -- you can see, if you go through the chart,

1    that that response was provided a number of times.  And, of

2    course, what I -- the concern that I identified previously

3    with that is:  Is it or isn't it?  Are there documents or

4    aren't there?  And, if they are, what are they and where are

5    they?  And they said they've been provided.  Well, then,

6    where are the Bates numbers or where is the identification

7    of:  See the emails I previously produced or see the -- you

8    know, see the text messages I previously for -- if it is

9    Mr. Abbott, just for example.  That's the concern.

10              THE COURT:  You see the problem, Mr. Dasinger?

11              ATTORNEY DASINGER:  Yes, sir.  And maybe we should

12   have worded it in a different way.

13              I believe that, basically, there are no documents

14   that they have acquired that we can turned over.  It's just

15   kind of a way for us to answer to assure the defense that, if

16   there are documents that come into our possession or come

17   into our plaintiff's -- our client's position, then we will

18   turn them over; but there are no documents pertaining to this

19   answer at this time.

20              If we need to reword that to make that -- to

21   clarify that, then we can certainly do that.  But that was

22   the intent.  There are no documents that pertain to this

23   question at this time.

24              THE COURT:  Why did you say they're already

25   provided?

1    ATTORNEY DASINGER:  Or never in possession at any

2  time.

3    THE COURT:  Isn't that inconsistent?

4    ATTORNEY DASINGER:  Maybe so, and maybe we didn't

5  word it correctly, Your Honor.

6    THE COURT:  So what is your answer now for this

7  record?  When that wording appears in these objections or in

8  the response to a request for production of documents or an

9  interrogatory, how am I to determine whether or not there are

10  documents or responses that are relevant to that question

11  existing or whether there are none or no information to be

12  provided?

13    ATTORNEY DASINGER:  Your Honor, if we have not

14  turned over documents then they are not in our possession or

15  in our client's possession.  So I would stand by that.  So

16  I'm sorry if the language or the answer was ambiguous.

17    THE COURT:  How are we going to know if you've

18  turned over documents or not in response to that question or

19  those series of questions?

20    The rule says you are to identify the documents

21  with particularity, and you are to make them available for

22  copying.  I know the general practice nowadays is to not have

23  onsite copying production.  It's more remote than that, and

24  it's produced in electronic form many times.

25    But when you make that type of response and there's

1    no specific identification of the documents you're talking

2    about, how are they to determine whether or not a responsive

3    document has been produced?

4             ATTORNEY DASINGER:  Your Honor, we've turned over

5    several documents, and all of the documents that have been

6    turned over in the request for production of documents, it is

7    my understanding, can be identified to an individual

8    client.

9             THE COURT:  Well, I asked this question once

10   before.  I'm asking you how you know that.  How is that

11   identification tied to this particular request for production

12   identifiable?

13            ATTORNEY DASINGER:  Your Honor, I know several of

14   the documents have particular plaintiff's names on them.  I

15   mean, we did not Bates label them, but it is my understanding

16   that it could be the documents could be particularly

17   identified to individual plaintiffs.

18            THE COURT:  Well, that gets us to the plaintiff,

19   but how does that get us to this particular request?

20            ATTORNEY DASINGER:  The particular request for --

21            THE COURT:  Yeah.  If I'm asking for a contract as

22   opposed to a mechanic record, just having the name of the

23   plaintiff on the top of the document doesn't help me much.

24   How do I identify that document as being responsive to a

25   particular request just by the name on the document?

1          ATTORNEY DASINGER:  Your Honor, I wish that I could
2    answer that question in particularity.
3          THE COURT:  How is it done in your practice?  When
4    somebody asks you for a tax records, how do you produce the
5    tax records?  And how do you identify them as responsive to
6    that request?
7          ATTORNEY DASINGER:  Your Honor, it would have the
8    parties' name at the top of any documents.  I mean ...
9          THE COURT:  All right.  And when you have 62, do
10   you have all the tax records for the 62 in the same
11   production?
12         ATTORNEY DASINGER:  Yes, sir.  And they would have
13   the particular names on the -- attached to each document.
14         THE COURT:  Okay.  So that's all that you think the
15   rule requires, is that you produce a document with that
16   plaintiff's name on it.
17         ATTORNEY DASINGER:  It shows, in particular, who
18   that answer is attached to or compliant for.
19         THE COURT:  All right.  Let me look.  Let's look at
20   one of the particular questions being asked.
21         Where would I find the latest response to the same
22   set of requests for production of documents?  I'm hearing
23   that it was corrected.  Do you know when the corrections were
24   made, Mr. Dasinger?
25         ATTORNEY DASINGER:  Yes, sir.  Absolutely.

1          I can tell you that, as far as Austal's first

2     Motion to Compel that was filed on January 29, we had

3     telephonic conference on February 8.  And then, seven days

4     later or six days later, on February 14, is when we filed our

5     response and turned over everything that needed -- that they

6     requested regarding the nine plaintiffs that had not answered

7     at all.

8          And then, as far as the second Motion to Compel

9     that was filed on February 20, we then remedied all of the --

10    or we believe that we remedied all of those issues that were

11    brought about in that motion on March 4.  And we also filed a

12    response on that day as well.

13          THE COURT:  And did you attach a copy of your

14    responses?

15          ATTORNEY DASINGER:  Did we attach a copy of our

16    responses?

17          THE COURT:  Yes.  That you said were corrected.

18          ATTORNEY DASINGER:  Yes, sir.

19          THE COURT:  I've got a copy of the response you

20    filed, but I'm not sure that I've got a copy unless, it was

21    filed by the defendant.

22          Ms. Willis?

23          ATTORNEY WILLIS:  That's what I'm looking at, Your

24    Honor, to see what is the most recent one that I have as

25    attached to motions.

1      And I believe it looks like I filed something on

2  the 12th, which appears to be our --

3      THE COURT:  Reply?

4      ATTORNEY WILLIS:  -- reply.  Yes, Your Honor.

5      And, let's see.  I believe, Attachment A to that --

6  let me make sure because I want to be correct on the dates --

7  I believe document 161-1 has -- I think these are the most

8  updated, if you will.  And Mr. Dasinger can correct me if I'm

9  wrong.

10      I'm looking for the date on the discovery responses

11  themselves because that's what I'm looking for.  I filed this

12  on the 12th of March, and it's document 161-1.  And it's just

13  some of the responses I think we used, again, as exemplars.

14      And I can't -- and I can stand corrected but I do

15  not see a date that these are served.  You know, like a

16  certificate of service, that these are served on X date.

17      ATTORNEY DASINGER:  Your Honor, I do have that.

18  I've got an email that was sent to Ms. Willis and defense

19  counsel from March 4 whereby we said:  Good afternoon, all,

20  please see attached documents that duly resolve all of the

21  articulated alleged deficiencies in Austal USA's most recent

22  Motion to Compel substantive discovery responses, and we sent

23  them at that time.  And also filed a response in opposition

24  of their motion, you know, basically stating that we had

25  corrected or certainly used every effort possible to correct

1    any deficiencies that the defense was complaining about.

2            And it was also our understanding that the only

3    issues raised on their second Motion to Compel was in regard

4    to interrogatories, not Motion for Production of Documents.

5            THE COURT:  Okay.  Well, I'm looking at your

6    response, and this is supposedly the corrected one.

7            ATTORNEY DASINGER:  From March 4, Your Honor?

8            THE COURT:  Yes, March 1.  This is document 161-1

9    in the record, and it is attached as an exhibit to the Reply

10   Brief filed by the defendant.

11           And the very first question on the request -- well,

12   let me look and see what the signature looked like.

13           ATTORNEY DASINGER:  Your Honor, you said March 1 or

14   March 4?  I just want to make sure I'm looking at the right

15   document.

16           THE COURT:  Well,  --

17           ATTORNEY DASINGER:  I don't have a document from

18   March 1.

19           THE COURT:  Okay.  This document is entitled -- is

20   defendant's third Request for Admissions, Interrogatories and

21   Requests for Production of Documents to the plaintiff.  And

22   the only date that I show is when it was filed, on the 12th

23   of March by defense counsel, in support of their Reply Brief.

24   And I was trying to find a signature line but I don't think

25   that part of the document was supplied.  It is Austal's

1   collective attachment A.

2           ATTORNEY DASINGER:  Is that the document,

3   Ms. Willis, that your chart is --

4           ATTORNEY WILLIS:  No.

5           Well, is that the document that the chart is

6   referring to?

7           I guess, yes.  Because I can verify that these are

8   as delineated in the reply.  Because we state in our reply:

9   Even in light of the additional responses served on March 4th

10  after we filed the motion, there's still deficiencies.  And

11  we attach -- we do attachment A.  So I can verify that that

12  attachment A is, in fact, the responses that we got from you

13  via email or however -- I think it was email on March 4.

14          THE COURT:  Okay.  Let's just take a look at that

15  first question for production of documents:  All documents

16  identified or referred to in your pleadings, motions, or

17  other filings, or in your responses to Austal's

18  interrogatories.

19          Response:  There are no documents in my possession

20  that are requested.

21          Now, what does that mean, Mr. Dasinger?

22          ATTORNEY DASINGER:  Again, Your Honor --

23          THE COURT:  That there may be documents in someone

24  else's possession?

25          ATTORNEY DASINGER:  It's a fail-safe, Your Honor,

1    that, if there are documents, we don't have them.  If we do

2    come into possession of any documents that would be compliant

3    with that answer, then we will turn them over.

4           If you just want us to say we don't have them or,

5    you know, no documents, I mean, or reword that in some way,

6    then we can do that.

7           THE COURT:  So does that sentence mean that you

8    don't know of any documents responsive to that request?

9           ATTORNEY DASINGER:  I guess that would be a way to

10   word it, yes, sir.  We don't have any documents and we don't

11   know of any documents at this point that would be compliant

12   or responsive to that particular question.

13          THE COURT:  Well, tell me what you mean with the

14   second sentence in that response:  Any requested

15   documentation has already been provided or I have never been

16   in possession of such requested documentation at any time.

17          ATTORNEY DASINGER:  Your Honor, I think that's just

18   a way that we worded we've turned over everything that we

19   have that would pertain to their question and nothing else

20   has come into our possession at this point.

21          THE COURT:  I thought you just said you knew of no

22   documents.  And then you're saying, in response to that

23   request, you have everything that we have.

24          ATTORNEY DASINGER:  We have turned over everything

25   that we have, Your Honor.  I can assure you of that.  And

1 │ that was the intent of the response.

2 │        THE COURT:  So every document you turned over --

3 │ and I'm assuming this is in your initial disclosures and your

4 │ production of documents up until March 1 of this year.

5 │        ATTORNEY DASINGER:  Yes, sir.

6 │        THE COURT:  Does that clarify your question?

7 │        ATTORNEY WILLIS:  My question?  Not really.  Well,

8 │ it does and it doesn't.  I'm very concerned that I keep

9 │ hearing:  At this point.

10 │        I understand we all have, under the rules, an

11 │ ongoing obligation to supplement.  But, if not at this point,

12 │ when are we going to get it?

13 │        And if the answer is that's it and that's all, then

14 │ well, you know, okay, yes, that does answer that question

15 │ now.  I hate that it's taken two telephonic conferences, a

16 │ 6-hour discovery conference, and us having to file a motion

17 │ to get to that.  But, if that's the answer, I just wanted to

18 │ be assured.

19 │        And I know, as lawyers, we can only -- we've got a

20 │ duty to make sure our clients do turn over everything.  I

21 │ just want to make sure that we're not going to get,

22 │ hopefully, surprised later on at the end of discovery.

23 │        THE COURT:  What type of documentation have you

24 │ received so far?  Or types of documents.

25 │        ATTORNEY WILLIS:  Types of documentation?  That is

1     also included in this chart, if I may refer to it a little

2     bit.

3             THE COURT:  Sure.

4             ATTORNEY WILLIS:  We've gotten -- it's a smattering

5     and it's hit or miss if it is -- a plaintiff gives things.

6     Some have given tax documents.  Some have given documents

7     like emails relating to a request for religious exemption at

8     Austal.  A couple -- some of have given some earnings from

9     subsequently employers.  Those -- that's generally, Your

10    Honor, the types of documents that we've received, and

11    they're delineated in that column called Document Received on

12    the chart.

13            THE COURT:  Mr. Dasinger, is this correct?  Looking

14    at Mr. Abbott, looking at the chart, there were no details

15    given on his current self-employment in response to

16    Interrogatory 3.

17            In response to Interrogatory 6, there were no

18    details on efforts to find employment.  I guess he did say it

19    was hard finding employment; worked at Ferguson for six

20    months.

21            Number 13, no details about healthcare providers.

22    He lists a knee and back pain.

23            And no details on his church affiliations.

24            Would that be the request in Interrogatory Number

25    21?

1          It appears you have gotten that he stated he was

2     baptized 10 years at Tillman's Corner Baptist, but you were

3     looking for other information about the various churches over

4     the years.

5          ATTORNEY WILLIS:   The Interrogatory 21 at issue or

6     is denoted in that chart, Your Honor, is:   Identify any and

7     all -- identify all religious places of which you claim to be

8     a member of or subscribed to; the length of time which you

9     claim to have been part of said faith or religion, as well as

10    any places of worship that you have visited or attended as

11    part of that faith or religion; and any practices or

12    traditions that you undertake and/or avoid as part of that

13    religious brief.

14         And, Your Honor, I'll note for the record that this

15    Other Notes column of the chart that we've provided to you

16    and Mr. Dasinger, I almost feel like we are treating as a

17    wish list.   When I said at the outset of the hearing I feel

18    like, absent some of these main objections, we're probably as

19    good as we're going to get, no, I don't think they're

20    completely responsive, and it's disappointing after this

21    length of time.   That isn't the main focus of the motion but

22    it is even -- in being diligent, knowing what we're going to

23    probably have to explore in more detail in deposition.

24         THE COURT:   Okay.   Thank you for reminding me of

25    that.   You're correct, you did say that.

```
1            And so let's move on, and I want you to guide me as
2  much as possible as to what the core issues we need to get
3  to.
4            And, number one, let's take up the objections.  And
5  I think I was clear, on any objections where there's been a
6  response, my only issue is whether or not the response is
7  sufficient.
8            Now, are there other objections that we need to
9  talk about?
10           ATTORNEY WILLIS:  Yes, Your Honor.  There are.
11           If you will turn your attention to document 161-1,
12  the first page, it's page ID 3704.  In the middle of the
13  paragraph on that page, it says:  Plaintiff's responses do
14  not waive the objections that are delineated and identified
15  within.  Clarifies the objections made within plaintiff's
16  first provision of such responses to defendant's counsel on
17  November 16, 2023 and supplemented on November 20, '23.
18           And our contention is that that whole set needs to
19  be removed because, as we've reviewed, on November 16,
20  everything was objected to for everybody.
21           THE COURT:  Which page again, please?
22           ATTORNEY WILLIS:  I'm so sorry.  Page ID 3704.
23  It's document 161-1.
24           ATTORNEY DASINGER:  Where would 3704 be?  Are we
25  pointing to a particular paragraph?
```

1    ATTORNEY WILLIS:  It's -- actually, it is the --

2  what I'm referring to is attachment A to our reply filed on

3  March 12.

4    THE COURT:  And it is entitled:  Dennis Abbott's

5  response to defendant's third set of written discovery

6  requests.  And I assume that's just as to Mr. Abbott.

7    Would that be correct, Mr. Dasinger?

8    ATTORNEY DASINGER:  Apparently so, Your Honor.

9    THE COURT:  Okay.

10    ATTORNEY WILLIS:  And, to be clear, this adoption

11  of objections precedes each of the sets of responses for each

12  plaintiff that has last been provided.

13    THE COURT:  All right.

14    ATTORNEY WILLIS:  Again -- I'm sorry.

15    THE COURT:  Okay.  My decision on that is that has

16  no bearing on the discovery issues at all.  And I'm not sure

17  what it's intended to do as far as preservation of objections

18  because if you're talking about at a trial or at a hearing

19  you have the opportunity to raise objections a second time.

20  So there's no real need to preserve.  The efficacy of

21  anything like this in a discovery battle is zero unless there

22  is an interrogatory or a request for production of documents

23  or a request and admission to which there is no response and

24  the objection would be applicable.

25    Now, if we have something like that in this

1  corrected response or supplemental response or whatever we're

2  going to call it, let me know and I'll look at it

3  specifically.

4      ATTORNEY WILLIS:  No, Your Honor.  Just the concern

5  was -- and I think we've now clarified that through him

6  saying that -- Mr. Dasinger saying that we've turned over the

7  documents we have.  That resolves that because I'm not

8  sitting here wondering, per some objection, or per, you know,

9  is something being withheld or not being produced.

10      So, having heard that, I don't -- the focus now

11  really is -- well, the focus now, I guess, is the ambiguous

12  responses that we've previously identified.

13      And I did have one more that we -- if I may or if

14  you're ready?

15      THE COURT:  I am.

16      ATTORNEY WILLIS:  -- that we identified with regard

17  to Mr. Abbott, and we did it within the body of the reply.

18  But, for everybody's reference, it's Request for Production

19  17, it's page ID 3719 to 3720.  And the request goes this way

20  or it reads this way:  Since 10 years before your termination

21  from Austal through the present date, all medical records,

22  healthcare records, hospital records, mental illness records,

23  prescription or drug records, or any other records or

24  materials regarding your physical, medical, or mental

25  conditions, illnesses, disabilities, without regard to

1    whether it is your contention that such conditions,

2    illnesses, or disabilities were caused in any way by the

3    claimed employment decisions and actions about which you

4    complain in your complaint, including all consultation

5    records, reports, diagnostic or treatment tests or

6    procedures, financial records, bills, invoices, writing notes

7    or memoranda.

8         And I will note, per our chart, that, originally,

9    that Mr. Abbott and other plaintiffs objected to this and

10   said HIPAA and they claimed HIPAA.  That was initially.

11   That's not in this set of responses.

12        In this set of responses, the response is:  I do

13   not know the medical information that is being requested or

14   am unable to obtain such information as I do not know where

15   to obtain the specific requested information is from.

16        I suppose that Mr. Dasinger may have already

17   answered that question if he's told us that everything has

18   been turn over.  But this is also what I would -- we would

19   consider to be a non-response or an ambiguous response

20   because it's either does he not know what's being asked and

21   doesn't understand the question or can he -- he doesn't know

22   where to get the information, and that calls into question --

23   at least, the way this is worded -- have all diligent and

24   reasonable, reasonable efforts been undertaken to obtain that

25   type of information in response.

1    THE COURT:  Which is it, Mr. Dasinger?  Does he not

2    know or is he unable to obtain information that exists?

3    ATTORNEY DASINGER:  Your Honor, I can say that our

4    clients have used reasonable, diligent efforts to obtain all

5    of the information that has been requested and everything

6    that they have gotten and turned over to us we have turned

7    over to the defense, which is over 10,000 pages of documents

8    altogether.

9    THE COURT:  Well, normally, you just sign a release

10   for the caregiver, and the defendant goes and gets the

11   information.  They don't rely on the patient, necessarily.

12   Did you give them that information?  Is Mr. Abbott

13   willing to release his medical information related to

14   conditions caused or exacerbated by the alleged violations in

15   this case?

16   ATTORNEY DASINGER:  Your Honor, all of our clients

17   would be willing to give whatever this Court orders to be in

18   compliance with discovery.

19   THE COURT:  Well, did he receive medical care based

20   on what happened at Austal?

21   ATTORNEY DASINGER:  I'm not sure about that, Your

22   Honor, but I could find out.

23   THE COURT:  We're late in the game for that.

24   Although, that should be a Motion to Compel.

25   Have you identified any caregivers for the 62

1   plaintiffs?

2          Okay.  That will be my order, Ms. Willis.  That, if

3   there are any caregivers that have not been -- do you know of

4   any that have been identified?

5          ATTORNEY WILLIS:  Well, Your Honor, I was just

6   looking at the chart, and I wanted to be perfectly candid

7   with the Court.

8          And it looks like, in response to Interrogatory 13,

9   that it sounds like Dempsey is identified.  And I don't

10  know -- I could look at that and tell you.

11         We actually redacted that for purposes of what was

12  filed with the Court because to the extent it contained any

13  medical information in response to 13, I guess, out of

14  abundance of caution.  But it does reflect in the chart that

15  somebody was identified in response to 13.

16         THE COURT:  Did you limit your request to medical

17  providers providing care for issues related to the actions

18  taken by Austal?

19         ATTORNEY WILLIS:  It says:  Include in your

20  response all providers, if any, who have treated you for any

21  injuries, illnesses or damages alleged in your complaint.

22         THE COURT:  Okay.  That will be my order.  That, if

23  that has not been done, that you identify those caregivers

24  within a certain period of time and provide releases so that

25  Austal, at their discretion, can seek out that medical

1    information.  Okay?

2              ATTORNEY DASINGER:  Yes, sir.

3              ATTORNEY WILLIS:  Thank you.

4              Your Honor, one more -- one other subset of issues,

5    and I'll turn the Court's attention to Interrogatory Number

6    19, and it's on page ID number 3714.  It's part of document

7    161-1.

8              And I would be very candid with the Court.

9    Usually, I don't like contingent interrogatories and very

10   rarely sort serve them, but this case is or the of unique.

11   But this particular interrogatory states:  Describe in detail

12   each action, comment, omission, or other activity or

13   inactively -- collectively, invasion -- which you contend

14   invaded your privacy; and, for each, state the date that such

15   invasion occurred, how you have knowledge of the invasion,

16   identify who engaged in the invasion, identify any witness to

17   the invasion, and describe your response to the invasion.

18             To the extent that you do not have firsthand

19   knowledge of the invasion, identify who told you about the

20   invasion or how you heard of it or how you otherwise have

21   knowledge of the invasion.

22             And the response to that was:  My private medical

23   information regarding my COVID vaccination status was exposed

24   by the defendant to all of my coworkers by requiring myself

25   and my non-vaccinated coworkers to adhere to special

1   conditions, such as wearing a mask and/or face shield that

2   vaccinated workers did not have to adhere to.  This caused me

3   to endure ridicule, shame, and a great deal of mental

4   anguish.

5           Your Honor, and I want to be clear, that this

6   particular response, while we're reviewing it for Mr. Abbott

7   as an example, was fairly -- not completely uniform, I want

8   to be clear -- but fairly uniform across the plaintiffs in

9   response to this interrogatory.  And I'll be very candid, I

10  mean, this is no secret, the purpose of having this

11  interrogatory, even serving this interrogatory, truly, was to

12  hopefully cut down on some of the deposition time so that we

13  could focus questions on:  Okay, you say Supervisor Sam did

14  this to you, tell me about that incident.  Versus

15  non-specific information.

16          And it is concerning to us that, here we are, we're

17  in the middle of March, these were served in October, and

18  this is all we've got on this particular issue.

19          I mean, I don't know what, if anything, to be done

20  about it, but I do know the point was to try -- you know, we

21  don't have who, we don't have when, we don't know how the

22  plaintiff, this individual plaintiff, Mr. Abbott, learned of

23  it, and we don't know of any witnesses.  And we don't know --

24  those details were not provided.

25          THE COURT:  Okay.  Mr. Dasinger, do you think this

1    is an adequate response to that question?

2            And this question sounds -- although, it is a

3    contention interrogatory, it almost sounds like it's asking

4    for initial disclosure information.  Because this is

5    pertinent information to your claim.

6            ATTORNEY DASINGER:  Your Honor, all I can say is

7    that the client has answered to the best of his ability, and

8    we have turned over everything.

9            THE COURT:  He says he was required to wear a face

10   shield, wearing a mask and/or face shield.  And he can't tell

11   us who required him do that?  Or when it was required?

12           ATTORNEY DASINGER:  Your Honor, I'm quite certain

13   that his supervisor, management -- I mean, we've actually got

14   documents that have been turned over to the defense of

15   memorandums that were promoted, that were, I guess,

16   disseminated throughout the entire Austal employment that

17   had -- that showed that, who required that.  I believe that

18   would have been either Rusty Murdau or the vice president

19   Patrick Gregg.  So that has all been provided.

20           And even though he did not answer that in

21   particular, a lot of the memorandums and the motions for

22   production of documents that were turned over answer those

23   questions perfectly.

24           THE COURT:  Well, I've heard of that before,

25   referring to a specific document for the information.  But

 1  that wasn't done here; was it?

 2          I mean, are you saying there are no other people

 3  than who you now think required him to mask up because he

 4  wasn't vaccinated?

 5          Did they have a health officer?  Did they have a

 6  health unit?

 7          ATTORNEY DASINGER:  Yes, sir.  They had an HR

 8  department that was in charge of setting the ground rules for

 9  all of the employment.  And there were several memorandums

10  issued and emails issued to all employees, and all those

11  documents have been turned over.

12          THE COURT:  So as far as today is concerned you can

13  confirm that that's -- well, do you have any idea how many

14  memorandums were issued?

15          ATTORNEY DASINGER:  I know there were several.

16  Several, Your Honor.  I could not state a number in

17  particular.  But we have gathered those from our own research

18  and our own clients.

19          And we have gotten a lot of the same memorandums

20  from the defense in their responses to our discovery

21  requests.

22          THE COURT:  Who disseminated -- oh, you're saying

23  the dissemination was by -- there was no dissemination other

24  than requiring the masks and the shields?

25          ATTORNEY DASINGER:  No, sir, I am not saying that

1   there were no other requirements.

2          THE COURT:  Well, that's what the question asks:

3   What other activity or inactivity which you contend invaded

4   your privacy; and, for each, state the date that the invasion

5   occurred.

6          So what other acts did the employer take through

7   its agents that invaded Mr. Abbott's privacy?

8          ATTORNEY DASINGER:  Your Honor, all I can say is

9   that there were several, and they were all turned over in the

10  memorandums.

11         THE COURT:  Well, why didn't you put that in the

12  response to this interrogatory?

13         You know the difference between just turning over

14  information and swearing to it; right?

15         ATTORNEY DASINGER:  Yes, sir.

16         THE COURT:  And there's a reason for that.

17         ATTORNEY DASINGER:  Your Honor, we went by what

18  Mr. Abbott gave us.

19         THE COURT:  No.  That can't be right.  You say you

20  turned over additional information.

21         ATTORNEY DASINGER:  Well, yes, sir.

22         THE COURT:  So he gave you that.

23         And you supervised the responses to these

24  interrogatories.  You signed off on them; correct?

25         ATTORNEY DASINGER:  Yes, sir.  I don't know if

1 | Mr. --

2 |      THE COURT:  So why wouldn't all of that be included
3 | in this response?

4 |      ATTORNEY DASINGER:  We did not believe it was
5 | necessary to clarify that when all of the information had
6 | already been turned over.

7 |      THE COURT:  This is sworn testimony.  Turned over
8 | information is not sworn testimony.  It may not even be
9 | admissible.

10 |      All right.  It's my ruling that this type of
11 | response to an interrogatory, either as to Mr. Abbott or
12 | anywhere else in these pleadings, is insufficient.  And I
13 | will require an additional response that does identify what's
14 | being requested, and that is the incidences and the timing of
15 | those incidences where each of the plaintiff's privacy was
16 | invaded as contend in the complaint.  All right?

17 |      What is your next question?

18 |      ATTORNEY WILLIS:  I believe that those -- I was
19 | trying to be as representative as possible.  And, setting
20 | aside the wish list of I wish I had more detail in that other
21 | column of the chart, which I don't think -- again, we could
22 | go back and forth, I'm afraid, for three more months if we
23 | tried to get all of that, and we'll address it as need be and
24 | be hopefully efficient in doing so in deposition.  But those
25 | were the issues.

1              THE COURT:  Okay.

2              ATTORNEY WILLIS:  Those were the issues,

3    substantively, that remained after supplemental productions.

4              THE COURT:  Sounds good.

5              We'll take a break.  When we come back, I'm going

6    hear from you on the request for attorney fees, and then

7    we're also going to have a discussion about going forward and

8    what the plan will be for going forward.

9              And, to be honest with you, based on my experience

10   so far, I think it's going to have to be motion-driven going

11   forward.  And if you do get in depositions and I'm

12   unavailable and you can't get me, then we're going to have an

13   issue of paying of costs of reconvening those depositions

14   once that particular issue is resolved.  So you need to think

15   about that seriously, because I may not be available with

16   this many depositions to be taken, for various reasons.

17             Let's take a 15-minute break.  Let's be back --

18   well, how about 13 minutes.  We'll come back at 11, and we'll

19   get started on those two issues.

20             [PROCEEDINGS IN RECESS]

21             THE COURT:  We'll go back on the record after

22   recess.

23             One other thing before I leave this area that we

24   have been talking about, my order regarding the production of

25   additional information will require that that be done within

1     14 days of the receipt of that order.

2              So let's turn to the request for attorneys fees.

3     Here again, early on, at the first Rule 16 conference back in

4     2023, I'm almost certain that I advised the parties that the

5     procedure would work this way:  That we would have informal

6     mediation conferences to discuss discovery issues that you

7     could not resolve on your own, after conferencing.  And we

8     did that in this case, and we've had several meetings.  But I

9     also advised you that, if we had to go to the next step of

10    filing written motions, responses, replies and then for the

11    Court to hold a hearing and for consideration of those

12    motions, that then the requirements of the rule as far as

13    attorneys fees and costs would probably be appropriate,

14    especially if one party has been put to the expense of having

15    to get a Motion to Compel granted as to certain information

16    that was not disclosed either by agreement or initially in

17    the responses to the interrogatories and requests for

18    production and requests for admission.  So we're at that

19    stage.

20             Now, Mr. Dasinger, it is my opinion that Austal is

21    the prevailing party on the Motion to Compel, or the two

22    Motions to Compel, based on what I've decided this afternoon.

23    And I'll hear from you as to why shifting fees appropriately

24    would not be necessary in this particular case or required in

25    this particular case.

1          ATTORNEY DASINGER:  Your Honor, I'd like to address

2     that, and the Motions to Compel.

3          First of all, regarding Austal's -- first of all,

4     regarding, I guess, starting back in November with our first

5     responses and then going up through December and on up to the

6     present, in December, we had done and always have attempted

7     to do everything that we can to be in compliance with the

8     discovery request and with Rule 34.

9          We had difficulties in December with several issues

10    with my office.  I had knee surgery on December 14.  I had a

11    staff member out on maternity leave.  We had the holidays.

12    We had another staff member that was sick for a good part of

13    the holidays.  I was basically out of commission and on

14    crutches and pain medications for approximately a month.  As

15    soon as we were back to full staff, we did everything that we

16    could to comply with Austal's discovery request.

17         The Motion to Compel that was filed by them on

18    January 29, we basically did everything in our power to

19    correct those.  We even had our staff members driving to our

20    clients' houses in West Mobile, and even in Mississippi and

21    Florida as well, because it was very difficult to get full

22    and complete compliance from some of our clients.  Some of

23    them were very non-responsive so we basically had to go and

24    knock on their doors in order to get these things.

25         We complied and did everything we could to remedy

1  the first Motion to Compel by getting the answers that were

2  needed for the nine people that did not answer at all.  So we

3  believe that that motion should have been moot in the first

4  place, because they were corrected.

5          Then Austal filed a second Motion to Compel on

6  February 20.  Basically, they said that they didn't -- I

7  mean, didn't like a lot of our answers.  Although we stand by

8  the fact that we were complain with Rule 34.  These were the

9  answers that were sworn and attested to us by our clients.  I

10 don't know what else we are supposed to do when they tell us:

11 These are our answers.  And we put them down and turn them

12 over.

13         We did, again, everything --

14         THE COURT:  You give them lawyerly advice as to the

15 appropriateness of their answers.

16         ATTORNEY DASINGER:  Yes, sir, we did.

17         A lot of our clients, as I believe Ms. Willis had

18 brought up in the past, had some answers that were just like,

19 you know:  None of your business.  You know:  Austal can

20 stick it.  You know, some of them using curse words.  So,

21 yes, we let them know --

22         THE COURT:  Why would you as an attorney file

23 responses like that?

24         ATTORNEY DASINGER:  Sir?

25         THE COURT:  Why would you as an attorney recommend

1    to your clients that those responses be filed?

2              ATTORNEY DASINGER:  We did not recommend that those

3    responses be filed, Your Honor.  But we were trying to get

4    answers to be in compliance with Rule 34, and it is -- I

5    cannot begin to tell you the difficulty of managing 62

6    separate plaintiffs, some of which are very uncooperative,

7    and to get them to answer the appropriate way.  We had to

8    have many conversations with several of our clients to let

9    them know that this is inappropriate and we cannot list this;

10   you are going to have to answer correctly.

11             THE COURT:  Do you understand your responsibility

12   in this lawsuit to merely pass along information from your

13   clients in response to discovery requests?

14             ATTORNEY DASINGER:  No, sir.  No, sir.  Again, we

15   did not pass along all of their responses or they would have

16   been more inappropriate than what was turned over.

17             So, again, we did everything in our power to be in

18   compliance.  Which, from the second Motion to Compel, it took

19   us longer to try to meet all of the things complained about

20   by Austal.  And, Your Honor, it was a monumental task, to say

21   the least, to correct both of these Motions to Compel.

22             Again, we filed -- we have filed our response on

23   March 4, which was as soon as we could have after their

24   second Motion to Compel.  And we believe that a lot of the

25   things complained about are somewhat nitpickey, and we feel

1  that we could -- and we can and have and would like to

2  complain about some of the answers that we have gotten from

3  Austal which we believe are much more noncompliant than what

4  we have been excused accused of doing.

5      Your Honor, we stand by the fact that we believe

6  that we are in compliance with Rule 34, and that both of the

7  Motions to Compel should be deemed as moot.  And, if Your

8  Honor does not deem them as moot, that attorneys fees in this

9  case would be inappropriate.

10      THE COURT:  The law, as I understand it, has long

11  been that responses filed after a Motion to Compel is filed

12  does not moot the Motion to Compel; does not resolve your

13  responsibility to have made those corrections prior to the

14  motion having to be filed.

15      Ms. Willis, your response?

16      ATTORNEY WILLIS:  To that statement in particular,

17  Your Honor, yes, I agree.  And I think we have provided --

18  Rule 3785 says that in regard to -- well, in more

19  particularly, up to fees request costs.  But the law is clear

20  and we've provided a couple cases that says if you provide

21  responses after the filing of a Motion to Compel that does

22  not render it moot and/or make fees, the award of fees

23  inappropriate or not proper.

24      THE COURT:  He's also made an argument that it

25  would be unjust to award fees in this case.  Your response to

1    that portion of his argument.

2         ATTORNEY WILLIS:  Yes, Your Honor.

3         Quite frankly, I think it would be more unjust not

4    to award fees, given what Austal has had to go through to

5    even get to the point where we are today.  Which I know we've

6    recited this for the Court, but we've had two separate -- no,

7    I'm sorry -- three now, telephonic conferences, January 3,

8    February 8 -- I'm sorry, there were two.  And then we had

9    that extensive hearing back in December, trying to address

10   and resolve some of these issues.  And that includes counsel

11   for Austal being, I think, gracious but diligent.  And what I

12   mean by that is, when we wouldn't get things, we would

13   follow-up on things.  Or, if they needed more time due to

14   office illness, technology, the various reasons asserted,

15   that we extended the courtesies that we believe everybody

16   should extend, and we feel like most do extend in this

17   district, and we've done that.

18        I want to get -- but, to get more particularly,

19   that it wouldn't be, you know, there was no -- getting to

20   would it be unjust, I have not seen, we have not seen

21   substantial justification for this conduct.  While I

22   appreciate and can't begin to imagine 62 plaintiffs, handling

23   all of that, that's the responsibility that was taken on when

24   the case was filed.  Federal rules still applies.

25   Obligations on the lawyers and the parties still apply

1    regardless of the size and the scope of the case.

2         And, quite frankly, some of this, we did everything

3    we could.  I feel like it's too little too late.  We had to

4    file the motion.  We had to go to the time and expense of

5    doing so.  And it was only after that, of course, that any

6    sort of -- it sounds like the majority of those efforts at

7    compliance were undertaken.  And that, really -- that,

8    frankly, should have started happening in October and

9    November of last year.  And, if it couldn't happen, you know,

10   exemption motions, requests, whatever, should have taken

11   place.

12        I do want to address, too, it would be -- there's

13   the argument about the parties and that some are indigent and

14   some don't have a good command of the English language and

15   the financial resources, and I want to address that, because

16   3785 doesn't take that into account, it doesn't say that we

17   should take that into account.  And it really doesn't begin

18   to explain away why it's taken us this long to get to this

19   point.

20        As to the financial resources, that this is

21   becoming kind of a pattern and practice in this case of big

22   company, you know, David versus Goliath type arguments, it

23   has no place when it come to the awarding of fees.  The fact

24   of the matter is Austal was required to expend the fees and

25   drafting and filing both motions and respond -- and replying

1  to the responses.  That doesn't even begin to account for the

2  amount of work and the amount of leg work that had to go into

3  the preliminary efforts prior to those motions or, for

4  example, the chart that our paralegals -- I hope Matt will

5  close his ears right now -- I don't know how much time they

6  had to expend in putting that together and going through

7  because the majority of the documents we got weren't

8  Bate-stamped.

9         But, that being said, the rule does not say if a

10  party can't -- you know, if a party has less financial

11  resources than the prevailing party, that we should not award

12  fees.

13         And the rule also says that I think that the Court

14  has the ability, whether it's the parties or the lawyers --

15  and that's not for me to decide or to say.  But, again, I

16  think we get back down to the fact of the matter of had

17  discovery requests in October, we've expended substantial

18  time and resources up to this point trying to get to even

19  where we are.  And, again, still, we have that nice little

20  wish list that we put to the side because we know we had to

21  focus on what we had to focus on in obtaining compliance.

22         And I guess one more thing I think that is

23  important to consider is it wasn't just us having conferences

24  or communications from Austal, the Court issued two orders.

25  One in December based on representations from plaintiffs'

1  counsel about what they could get and when they could get it,

2  and then there was another order -- there was another order,

3  I believe, in January as well, following the January 3

4  conference about deadlines and the obligations to provide

5  responses.

6       And, Your Honor, let me just conclude by saying

7  neither Austal nor I personally take filing motions to compel

8  lightly.  We don't take -- I don't routinely -- we don't

9  routinely go out and seek attorney's fees even though they're

10  available to a prevailing party per the rule.  But, in this

11  instance, it has been such a -- you know -- a chore, a task,

12  a burden, to get basic information that we were entitled to

13  under the federal rules.

14       THE COURT:  Okay.

15       ATTORNEY DASINGER:  Your Honor, I would like to --

16  and something that we would like to address is filing our own

17  Motion to Compel.  You know, we've heard a lot about their

18  responses -- you know, our responses being inadequate and

19  them having to file these motions and so forth.  Your Honor,

20  in their responses to us, we had many of the same -- well,

21  more evasive and standardized answers to our requests.  One

22  of the ones in particular that we got over and over and over

23  again is:  In addition to its general objections, Austal

24  objects to this request on the grounds that it is

25  overly-broad and unduly burdensome and irrelevant to the

1  claims and the defenses of the parties.  Austal further

2  objects to this request to the extent that it seeks documents

3  and/or information protected by the attorney-client privilege

4  and/or the work product doctrine.  Austal further objects to

5  this request to the extent that it seeks information and/or

6  documents beyond the phase one discovery set out in the

7  Court's scheduling order.

8        In addition -- that was in their first responses.

9  And then, in their second responses, they said:  In addition

10  to its general objections, defendant objects to this request

11  on the grounds that it is overly-broad, unduly burdensome.

12  And basically the same response in our second request for

13  interrogatories and motions to produce.

14        Also, in this Court's order dated 9/14/23, Your

15  Honor stated:  Should this new round of discovery reveal

16  specific documents or specific information that was

17  improperly withheld in phase one discovery, they will have a

18  second and more informed opportunity to seek assistance from

19  the Court should be defendant be unwilling to produce the

20  information identified with specificity that meets both

21  relevancy and proportionality standards.

22        We have constantly not gotten what we have asked

23  for, Your Honor.  And we asked for attorneys fees for what we

24  had to file to get what we wanted, and we're still stuck in

25  that same situation where they have not turned over documents

1    and answers that we know exist.

2            So I just want to make it clear that, if this is

3    the route that the Court is going to take, as they have

4    asked, then it needs to be fair on both sides.  We have not

5    gotten what we wanted and are entitled to, and we believe it

6    has been much more egregious than our strong efforts to do

7    everything that we can to be in compliance.

8            THE COURT:  Is this a request to allow you to file

9    a Motion to Compel?

10           ATTORNEY DASINGER:  I think that -- yes, sir, if

11   that's -- yes, sir.

12           THE COURT:  Have you talked to Ms. Willis about the

13   problems with phase two discovery?

14           ATTORNEY DASINGER:  Yes, sir.

15           ATTORNEY WILLIS:  No.  Let me correct the record

16   there, Your Honor.  We got a letter on February 9, very

17   general, much like in Phase One, that identified nothing

18   specific that they were missing.  Despite that fact, I

19   responded to that letter on February 23 and walked through

20   item-by-item, request-by-request, either we don't have

21   anything else -- I addressed each one as best I knew how

22   without any specific information.

23           We had a telephonic conference at plaintiffs'

24   counsel request that following Monday, February 26.

25   Mr. Kavanagh and I both participated.  During that

1    conference, Mr. Mertle assured us that they would provide us

2    with a list of what they contend at this point that's not

3    been provided or that they contend as being improperly

4    withheld.  I'm still waiting on that list.

5             So it is, of course, the Court's discretion to

6    allow them to file a motion.  But I want to be clear that

7    that is not Rule 37 good-faith efforts, to play hide the ball

8    of you haven't given us what we want but we're not going to

9    tell you what it is.

10            THE COURT:  Was a list of specific items deficient,

11   a deficiency list promised?

12            ATTORNEY DASINGER:  Your Honor, we can certainly --

13   I mean, they know --

14            THE COURT:  My question is:  Was a deficiency list

15   promised?

16            ATTORNEY DASINGER:  Your Honor, I cannot state with

17   specificity if we promised a list or not.  But there are

18   things that we asked for constantly, and they have failed to

19   provide them.

20            THE COURT:  You were not on that conversation?

21            ATTORNEY DASINGER:  I was on that conversation,

22   Your Honor.

23            I know that we've asked for a list of -- basically,

24   a list of who was vaccinated at Austal and who was not

25   vaccinated at Austal, including their leadership, which we

1   believe is very important and it would be within their

2   business records.  They have those documents, and they have

3   refused to turn them over.  And we've let them know certainly

4   times and they --

5           THE COURT:  Do you have -- you sent them a letter;

6   is that correct?

7           ATTORNEY DASINGER:  Yes, sir.

8           THE COURT:  And then you had a telephone

9   conference?

10          ATTORNEY DASINGER:  Yes, sir.

11          THE COURT:  In that letter or in that conference,

12  did you advise them of the very thing that you're advising

13  me, that you need a list of the people vaccinated at Austal

14  during a certain period of time?

15          ATTORNEY DASINGER:  Your Honor, we know that we

16  have asked for it several times.

17          As far as a specific document, I'm not going to

18  state to the Court that there is a specific document, you

19  know, listing the items that we need.  However, we have

20  listed several times in different emails and correspondences

21  the request for what I've just mentioned.

22          THE COURT:  Do you think it might be extremely

23  helpful to give them a list of what you say is deficient and

24  have them respond to that list without going through the

25  process of filing a motion and briefing a motion?

1      ATTORNEY DASINGER:  We would be happy to provide a

2   specified list if has what is needed, Your Honor.

3      THE COURT:  Okay.  All right.  I think your

4   conferencing needs to be completed.  If she is correct in

5   what she said, a promise and a conference is respected as far

6   as I am concerned.  And if Mr. Mertle made a promise to

7   provided a specific deficiency list, he needs to do, so she

8   can respond to it.  And, after that has been done and I have

9   been presented with that information, and you still need to

10   file a Motion to Compel, I will give you that authority at

11   that time.

12      ATTORNEY DASINGER:  Yes, sir.  Thank you.

13      THE COURT:  Okay?

14      Now then, before I conclude, let's talk a little

15   bit about going forward.

16      As far as the medical information is concerned, I'm

17   not so sure how much of that there's going to be.  It sounds

18   to me like this is a case where mental anguish is alleged but

19   I don't know that there's much medical evidence supporting

20   the mental anguish.  Am I wrong?

21      ATTORNEY DASINGER:  I would concur with that, Your

22   Honor.  It's more of the mental anguish -- to my knowledge,

23   no one had to go and seek medical attention, you know, due to

24   any of the anguish, you know, to having to wear the mask or

25   face shields or anything of that nature.

1          THE COURT:  That would have been very helpful to

2    have let them know early on in your responses.

3          Okay.  Now, what other information -- help me with

4    my memory as to today's discussion:  What other information

5    were you asking for that I agreed to require that they

6    produce?

7          ATTORNEY WILLIS:  More specifically, Your Honor, I

8    think -- you did address that.  I think we did cover the

9    ambiguous response about are there documents or aren't there,

10   and I think that's been covered in hearing, and we've got a

11   record and a transcript of that.  So, unless Your Honor

12   really wants to put that in an order, I think it's been

13   addressed here.

14         The other one that we looked at was Interrogatory

15   19 regarding the invasion of privacy and the actual response

16   or details of who, what, where, when information.

17         THE COURT:  We definitely want that responded to.

18         All right.  Going forward, it sounds to me like in

19   going forward -- and we're talking about depositions.  Is

20   there anything left besides the depositions?

21         ATTORNEY WILLIS:  No, Your Honor.  Not as far as

22   we're concerned.

23         THE COURT:  So what are your concerns about getting

24   those scheduled and getting those taken?

25         ATTORNEY WILLIS:  Where do we stand?  I feel like

1   -- and Mr. Dasinger may have a difference of opinion --

2   obviously, we have not been in a place because we have been

3   in this written discovery back and forth.  Again, as I told

4   the Court at the beginning, I feel like, with this upcoming

5   order and information, and what we've got is probably as good

6   as we're going get, and it may not be ideal but we'll be in

7   that sort of position.

8            So I would say if we are -- and I know an order may

9   not come out today but let's say it comes out Tuesday -- I'm

10  not putting any pressure on the Court; you have other

11  obligations -- but let's say it comes out Tuesday, and it's

12  14 days from that, that's going to put us into April.

13           But, assuming we get what we're supposed to get, I

14  mean, I don't see any reason -- and Mr. Bauer can disagree

15  with me -- that we wouldn't start mid to late April on

16  depositions.

17           And the thought process originally -- and I think

18  we had shared this with the Court -- was to designate at

19  least of a couple days a week as deposition days.  What we're

20  going to do is have two separate rooms with two separate sets

21  of counsel, right, so that two depositions can occur

22  simultaneously for efficiency sake.  The goal was also to try

23  to get two depositions in a day.  And again, that's what

24  we're, for example, that invasion of privacy interrogatory,

25  that's part of the reason we wanted to do some of that, was

76

1   to streamline those efforts and do them that way until they

2   are completed.

3          I think that was the plan.  And I think that,

4   unless anybody has any problem with that schedule, I think

5   that we're now in a position that we could do that.

6          THE COURT:  Mr. Dasinger, you've been pushing to

7   start the depositions; correct?

8          ATTORNEY DASINGER:  Well, Your Honor, I mean, they

9   had requested the depositions, and we started talking about

10  it, I believe, back in November.  So we got our clients --

11  which, that was another difficult task -- to get them on

12  board and ready to do depositions beginning in December.  We

13  have been ready, willing, and able to conduct the depositions

14  at any time since then.

15         THE COURT:  Are you ready to go, even though you've

16  addressed deficiencies in the written discovery provided to

17  you by Austal?

18         ATTORNEY DASINGER:  Well, Your Honor, I mean, I

19  think, with the scheduling order that we have in place

20  requiring us to finish discovery by August of this year, I

21  would -- I would think that we could go ahead and

22  move forward with depositions and, you know, address any

23  issue that we have with a Motion to Compel along the way.

24         THE COURT:  Okay.  All right.  Well, I wanted to

25  let you know that Judge DuBose has set aside a month for this

1   case.  And she intends that it go in that month, if not

2   before.

3            That brings up another question.  And so -- and

4   what I'm trying to tell you is that you need to make sure --

5   or to the best of your abilities -- that this case is

6   resolved or the pretrial proceedings in this case are

7   resolved in time to be ready for motions and preparing her

8   pretrial document.

9            ATTORNEY DASINGER:  We fully intend do that, Your

10  Honor.

11           THE COURT:  Okay.

12           Now, as far as the taking of depositions

13  themselves, what -- I'm curious as to your practice and your

14  experience in cases like this.  And I know this is fairly

15  unusual.  But when I started investigating the claims by

16  Franklin that were made, I saw that many of these claims have

17  been percolating over the United States in various forms, so

18  I'm wondering if you anticipate any deposition problems

19  coming up.

20           One I've heard already is the type of clients that

21  you have and whether or not your clients are going to be

22  responsive to deposition questions and whether or not they

23  are -- you raised, in my mind, a demeanor issue, and whether

24  or not we need to have those depositions taken in a

25  particular location.

1            ATTORNEY DASINGER:  Your Honor --

2            THE COURT:  Do you anticipate problems with your

3    clients during these depositions?

4            ATTORNEY DASINGER:  Your Honor --

5            THE COURT:  Because, if you think the Written

6    Requests for Information was sensitive, once Ms. Willis

7    starts asking them questions orally, in a deposition setting,

8    it could be more upsetting.

9            ATTORNEY DASINGER:  Your Honor, I mean, I would

10   like to make it clear that the vast majority of our clients

11   are very compliant and easy to work with.  However, there are

12   a few that have been more difficult.  However, we have had

13   in-depth discussions with them and will continue to do so if

14   need be.

15           And, certainly, we will instruct them as to the

16   rules of answering deposition questions in the correct form.

17   And, you know, if we have to step outside with them at some

18   point and instruct them further, then we intend to do that.

19           So, Your Honor, I'm confident that they will be

20   compliant in depositions.

21           THE COURT:  And what is your position and your

22   experience on the raising of objections in a deposition?

23           ATTORNEY DASINGER:  I mean, sometimes, we object to

24   the form of a question or we object, you know, to the

25   relevancy of the question.  But then we will go ahead and

1    instruct our client to answer, and reserve.

2            THE COURT:  And there are a couple of situations

3    where you can instruct them not to answer; right?

4            ATTORNEY DASINGER:  Yes, sir.

5            THE COURT:  Okay.  And, usually, that's when I get

6    a phone call.

7            Now, if I'm unavailable and that happens, you may

8    have to continue with other parts of the deposition until I'm

9    either available or I can set a time for you to come to me

10   and we can discuss it if it's a particularly difficult

11   question to answer.  So you just need to understand that and

12   you need to be prepared for those types of problems that

13   could arise in these types of depositions.

14           I would suggest to you that it's much better for

15   you to complete the deposition and reserve any problems or

16   non-responsive answers -- excuse me -- refusal to answer

17   until afterwards, and then you face the problem of having to

18   pay for a second deposition if the Court rules that that

19   answer should have been provided.  So that will create

20   another satellite litigation if that happens.

21           I would suggest to you that you try to avoid that

22   at all costs because it will only be fair in those situations

23   to award or to shift costs to the prevailing party.  Okay?

24   And that is my practice.

25           ATTORNEY DASINGER:  Yes, sir.

1    THE COURT:  Especially when I've asked you to be

2  cognizant of that requirement in the rule.  And the fact that

3  I feel like that's the only fair way, regardless of the

4  status of the parties, to conduct depositions and to ensure

5  that those depositions are completed under the rules.  Okay?

6    Ms. Willis, any other concerns that you have about

7  going forward with the depositions?

8    ATTORNEY WILLIS:  Not -- no, Your Honor, as long as

9  we get what we need going in.

10    And we're going to do everything in our power to

11  keep them moving.

12    THE COURT:  Okay.  All right.  Anything else you

13  want to put on this record before I tell you what I think

14  should be done and what I'm prepared to do?

15    ATTORNEY WILLIS:  No, Your Honor.

16    THE COURT:  Mr. Dasinger?

17    ATTORNEY DASINGER:  No, sir, not at the present

18  time.

19    THE COURT:  As to the Motion to Dismiss for Failure

20  to Prosecute, I deem that to be moot.  I do not intend to

21  enter a report and recommendation because I think we have a

22  consensus of the parties that it's moot.

23    As to the Motions to Compel portions, I grant the

24  Motions to Compel in a limited manner based on my oral

25  statements to you that have been preserved in this record.

1          I do find that Austal is the prevailing party on

2     the Motions to Compel but will only compel those specific

3     items that we discussed earlier and will order that they be

4     produced within 14 days after the entry of my order.

5          I also find that, based on the prior discussions

6     that we've had, the prior actions in the record of the

7     parties and the attempts to avoid the filing of a Motion to

8     Compel that were engaged in but failed, it is required under

9     the rules that fees be shifted to the plaintiffs and their

10    counsel in this particular case.  So the order will grant the

11    request for attorneys fees and costs.

12         The defendant Austal will be given an amount of

13    time to provide me with their assessment or its assessment of

14    what the appropriate fees should be, and they must be

15    reasonable and proportional to what's been decided.

16         I would also ask that as a part of that

17    presentation that Austal review both an award of fees that I

18    have entered in the past and that Judge DuBose has entered in

19    the past, and to be cognizant of what we consider to be

20    reasonable fees in this court.

21         Also, if you've been granted attorneys fees,

22    Ms. Willis, that information should be provided.  If a court

23    has considered your request for fees and has made a

24    determination based on your background, education, et cetera,

25    as to what those fees should be.

1          I do plan to enter an order, and what I would

2    propose is that a proposed order be drafted by Austal and

3    presented to me for my consideration that provides a

4    historical perspective as you have a done in your briefing as

5    to the attempts and the factual -- the procedural and factual

6    background leading up to the Motions to Compel and also

7    Conclusions of Law that support my decision to grant the

8    Motions to Compel.

9          Now, you need to let me know how much time it will

10   take for you to put all of that together.

11         ATTORNEY WILLIS:  The proposed order as well as the

12   support for a reasonable award of attorney fees?

13         THE COURT:  Attorneys fees.

14         ATTORNEY WILLIS:  Is 21 days?

15         THE COURT:  21 days is fine.

16         And this transcript that Susan has made today will

17   be available to you if you need it.  And that was one reason

18   for having her here today, instead of having to transcribe an

19   electronic record.  If you do need a transcript, it's not

20   free.

21         MS. WILLIS:  I understand.

22         THE COURT:  Okay.

23         Any questions about my decision?

24         Mr. Dasinger?

25         ATTORNEY DASINGER:  Just, Your Honor, just we tried

1  everything we could to be in compliance, Your Honor, so we
2  don't believe that attorneys fees should be awarded.
3        THE COURT:  Well, I've made my decision.  And,
4  right or wrong, that's what it's going to be, based on my
5  experience in this case.
6        I personally feel that things could have done much
7  smoother and we would not be here today if that had occurred.
8  And I was involved in many attempts to try to get the parties
9  to recognize that and the resolution today after a hearing,
10  which has now lasted almost three hours, was not necessary.
11  It was absolutely not necessary.  I don't know the reasons
12  why we had to go to this point.  I only have my suspicions,
13  which I'll keep to myself.
14        Okay.  21 days for the proposed order, a copy to
15  Mr. Dasinger.  That's not for him to respond to.  It's just
16  for me to understand what your position is as to what the law
17  and the facts are supportive of your motion and supportive of
18  your attorneys fees.  And then I will enter my order.
19        Please produce that in Word format and send it to
20  my email address at William underscore Cassidy at
21  alsd.uscourts.gov.  Okay?
22        All right.  That concludes this hearing.  We are
23  adjourned.
24        [PROCEEDINGS IN RECESS]
25

1

2              OFFICIAL COURT REPORTER'S CERTIFICATE

3

4          I (we) certify that the foregoing is a correct
   transcript of proceedings in the above-entitled matter.

5
                              /S/ Susan A. Zielie, CVR-CM-S, FCRR
6                             Susan A. Zielie, CVR-CM-S, FCRR
                              March 27, 2024
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25